[counsel on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC,<br><br>    *Plaintiff,*<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    *Defendant.* | Case No. 3:25-cv-09579-VC (TSH)<br><br>**META'S DISCOVERY STATUS REPORT**<br><br>Judge: Hon. Thomas S. Hixson<br>Conference Date: August 5, 2026 |
| CHICKEN SOUP FOR THE SOUL, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 3:26-cv-02333-VC<br><br>**META'S DISCOVERY STATUS REPORT**<br><br>Trial Date: None<br>Date Action Filed: March 17, 2026 |
| COGNELLA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 3:26-cv-04053-VC<br><br>**META'S DISCOVERY STATUS REPORT**<br><br>Trial Date: None<br>Date Action Filed: May 4, 2026 |
| CAMBRONNE, INC. ET AL.,<br><br>    Plaintiffs,<br><br>    v.<br><br>META PLATFORMS, INC.,<br><br>    Defendant. | Case No. 3:26-cv-03725-VC<br><br>**META'S DISCOVERY STATUS REPORT**<br><br>Trial Date: None<br>Date Action Filed: December 22, 2025 |

Case No. 3:26-cv-03725-VC

META'S DISCOVERY STATUS REPORT

Defendant Meta Platforms, Inc. ("Meta") regrets the need to file a unilateral discovery status report and does so only after Entrepreneur's counsel insisted on re-writing their positions well *after* the 12pm filing deadline (Dkt. 19), which put Meta in an unfair position: either agree to Plaintiffs filing a "joint" status report that Meta did not have any opportunity to meaningfully consider or address the belated redlines and submit a joint report many hours after the Court-ordered deadline. Attached as Exhibit A is Entrepreneur counsel's transmission email from 3:15pm ET/ 12:15pm PT attaching the re-written joint report that, for the first time, raised new issues about which they did not previously confer and seeks specific forms of relief that Plaintiffs did not request in its earlier version of the joint statement. *See* Exhibit B (redline of re-written report).[1]

Today's process is the latest, not the first, example of Plaintiffs providing its positions for joint statements for the first time, hours prior to (or in this case, after) the filing due date. As the email attached as Exhibit A reflects, Meta anticipated and attempted to prevent the exact scenario that has unfolded today by emailing Plaintiffs' counsel on July 30, 2026 about a proposed process:

> "The current CMS process is untenable for all parties, and we are hoping for your help figuring out a better way forward, including in advance of the filing due Tuesday at 12p PT/3p ET. For Tuesday, we suggest the parties mutually exchange a list of specific issues that may warrant inclusion in the filing on Sunday by 12p PT/3pm ET. We then propose that the parties confer at 9a PT/12p ET on Monday to narrow the issues. While the Plaintiffs will be responsible for drafting the statement, we propose that the parties mutually exchange their positions on the agreed-upon issues by 1 PT/ 4pm ET on Monday, and provide any final updates to their positions by 9p PT/12p ET on Tuesday."

Plaintiffs never acknowledged, responded, or suggested an alternative process. Yesterday morning, counsel for Meta followed up on Plaintiffs' lack of a response, and asked for them to "provide us with your portions of the Discovery Status Report no later than 2pm PT today so Meta has sufficient time to provide our responses." Plaintiffs did not respond. Instead, they provided their positions for the first time at 11:35pm ET/8:35pm PT in a 16-page single-spaced document, and requested that Meta provide edits by 1:00pm ET/10:00a PT. Meta immediately worked to

---

[1] Exhibit B is a redline that Meta prepared comparing the version of the joint report that Entrepreneur's counsel sent after the filing deadline to the one Meta sent to Plaintiffs prior to the filing deadline. The redline Entrepreneur sent did not properly reflect the proposed edits.

provide its positions, and sent a ready-to-file version to Plaintiffs at 1:41pm ET/10:41am PT. At 3:15pm ET/12:15pm PT–nearly thirty minutes *after* the filing deadline–Plaintiffs provided a re-written report that raised issues and sought forms of relief for the first time. Because Meta has not had the opportunity to consider or confer on the issues Entrepreneur raises for the first time in its belated submission, Meta respectfully requests that the opportunity to meet and confer on the issues before the Court considers them.

## INTRODUCTION

*Entrepreneur*: Meta has serious concerns regarding Entrepreneur's discovery responses and productions to date, which uniquely prejudice Meta because, unlike Entrepreneur, Meta did not have an extensive preexisting discovery record with which to work. Entrepreneur's current productions and discovery responses are deficient in multiple ways, including:

1. Entrepreneur's production of the custodial files for Ryan Shea, Entrepreneur's CEO, and Michael Frazier are incomplete due to unexplained gaps in time in the produced emails;

2. Entrepreneur's custodial productions do not appear to include any non-email communications. Multiple Entrepreneur witnesses testified that they use non-email modes of communication, including Slack messages, Google Chat, and SMS text messages for work-related communications that are potentially relevant to this case. Entrepreneur must produce all relevant non-email communications;

3. Messrs. Shea, Frazier, and Strain all testified to the existence of relevant and responsive documents that Entrepreneur has failed to produce, including for example annual consolidated financial statements between 2018 and present and P&L statements for each book that Entrepreneur had published;

4. Entrepreneur ignored repeated requests by Meta to accelerate the timing of search protocol disclosures required by Section 4(a) of the ESI Protocol given the admitted deficiencies with the custodial productions;

5. Entrepreneur's responses and objections ("R&Os") to Meta's written discovery are deficient and should be supplemented. First, a number of their responses to Meta's RFPs indicate they are inappropriately withholding a number of categories of documents. Second, their

responses to a number of Meta's Interrogatory requests fail to directly answer the questions asked. Third, Entrepreneur's responses to Meta's RFAs improperly include narrative explanations inappropriately caveating the admissions or denials that reframe the questions posed.

Meta respectfully requests Entrepreneur provide a date certain in the near future by which it will complete productions for already-deposed custodians and produce all responsive documents that those custodians have testified exist. Entrepreneur must confirm all custodial productions will include relevant, responsive communications spanning the relevant time period and non-email communications, such as messaging via Slack, Google Chat, or text. Meta also requests that Entrepreneur immediately provide the search protocol disclosures required by Section 4(a) of the ESI Protocol. Meta also asks for a firm date by which Entrepreneur either will amend its R&Os that Meta has identified as deficient or confirm in writing that it is standing on the R&Os as they currently exit so that Meta may promptly seek relief from the Court. Finally, Meta requests that the Court set a structured exchange for future joint discovery status statements, to ensure that the process of preparing such reports is efficient and fair to all parties.

*Three Cs*: The Three C's production efforts are extremely deficient. Plaintiffs have yet to produce a single custodial document. In total, Plaintiffs have produced a few thousand non-custodial documents, which appear to be almost exclusively their works and registration-related materials. Cognella and Cambronne have not produced communications of any kind, and Chicken Soup appears to have produced only seven email communications. Their written discovery efforts fare no better. The Plaintiffs' once-amended initial disclosures provide no damages computations as Rule 26 of the Federal Rules of Civil Procedure ("Rule(s)") require. Nearly each of their interrogatory responses requires supplementation because they do not fully answer the questions.

Meta already raised the snail's pace of Three C's discovery efforts and sought confirmation of when Meta will receive additional productions. On multiple occasions, Meta has detailed the Three C's noncompliant initial disclosures, and seeks a date by which they will provide a compliant Rule 26 disclosure. Meta hopes that at tomorrow's conference, the Three Cs will provide clarity on

their production timeline and confirmation of whether they intend to stand on their current initial disclosures and interrogatory responses and, if not, a date by which they will serve amendments.

## I.    DEPOSITION STATUS

Set forth below is the status of the depositions of Meta's witnesses, Entrepreneur's witnesses, the Three C's witnesses, and third-party witnesses as of the date of this statement.

**Meta's Witnesses**

Since the last Case Management Conference in this case, Plaintiffs have completed seven (7) fact depositions of Meta's witnesses in the month of July.  The parties have tentatively scheduled many of the remaining witnesses, as follows:

- Britt Montalvo on August 7, 2026 (continuation of July 28, 2026, deposition);

- Nikolay Bashlykov on August 7, 2026;

- Xiaolan Wang on August 10 and 11, 2026;

- Shelley Venus on August 18, 2026; and

- James Beldock on August 26–28 (in both capacities).

**Entrepreneur's Witnesses**

| *Depositions Taken* | | |
|---|---|---|
| 1. | Michael Frazier | July 29, 2026 |
| 2. | Ryan Shea | July 30, 2026 |
| 3. | Sean Strain | July 31, 2026 |
| *Depositions Scheduled* | | |
| 4. | Charles Muselli | August 6, 2026 |
| 5. | Jessica Thomas | August 13, 2026 |
| 6. | Chris Damore | August 17, 2026 |
| 7. | Brittany Robins | August 18, 2026 |
| 8. | Bill Shaw | August 19, 2026 |
| 9. | Lucy Gekchyan | August 20, 2026 |
| 10. | Jason Feifer | August 25, 2026 |

**Third-Party Witnesses**

| 1. | Affonso Reis | August 25, 2026 |
|---|---|---|
| 2. | Anna Grosul | Subpoena not served |
| 3. | Stephen Roller | August 26, 2026[2] |

---

[2] Plaintiffs have not informed Meta whether Mr. Roller has actually been served.

Case No. 3:26-cv-03725-VC

**Three Cs' Witnesses**

| Depositions Scheduled | | |
|---|---|---|
| 1. | Amy Newmark | August 11, 2026 |
| 2. | William Rouhana | August 12, 2026 |
| 3. | John Carreyrou | August 17, 2026 |
| 4. | Matthew Sacks | August 18, 2026 |
| 5. | Jane Adams | August 20, 2026 |
| 6. | Lisa Barretta | August 21, 2026 |
| 7. | Michael Kochin | August 26, 2026 |
| 8. | Josh Perigo | TBD: Week of August 24–28, 2026 |
| 9. | Alia Bales | TBD: Week of August 24–28, 2026 |
| 10. | Chelsey Rogers | TBD: Week of August 24–28, 2026 |
| 11. | Dave Wilson | TBD: Week of August 24–28, 2026 |
| 12 | Alexa Lucido | TBD: Week of August 24–28, 2026 |
| 13. | Ivey Preston | TBD: Week of August 24–28, 2026 |
| 14. | Ryan Bailey | TBD: Week of August 24–28, 2026 |
| 15. | Natalie Piccotti | TBD: Week of August 24–28, 2026 |
| 16. | Kassi Graves | Not scheduled |
| 17. | Bassim Hamedeh | Not scheduled |

*Deposition Scheduling of Meta Witnesses:* Meta has endeavored to address Plaintiff's ever evolving list of deposition witnesses. With regards to Ms. Scissors, Meta disagrees with Plaintiffs' characterization: Judge Chhabria asked Meta for clarification regarding the scheduling of that deposition, and Meta explained to Judge Chhabria that Ms. Scissors' deposition will be promptly scheduled upon her return from PTO, if not sooner. Regarding Ms. Lu, Meta is producing her custodial documents as ordered by Judge Chhabria. During the 7/31 Conference, Judge Chhabria suggested that the deposition of Ms. Lu (or that of an alternative deponent) may not be "necessary." Mr. Sankararaman is currently on parental leave. The only date Meta can offer for his deposition during the fact discovery period is September 4. Regarding Mr. Fang, he is available on Thursday, September 3. With respect to Mr. Zuckerberg, Meta will address that deposition with Judge Chhabria (who permitted briefing of the issue during the 7/31 Conference).

No action from the Court is necessary at this time on the scheduling of Meta's witnesses. However, to the extent Plaintiffs intend to depose any other Meta current or former employees in this matter, Meta asks that the Court order Plaintiffs to identify those persons no later than Thursday, August 6th at 5pm PT. To make all reasonable efforts to comply with the Court's

Case No. 3:26-cv-03725-VC

META'S DISCOVERY STATUS REPORT

custodial document production deadlines, Meta needs to know the identity of any deponents by that date so that it can collect their custodial documents and produce them before the Court-ordered deadline of four days before depositions.

***Depositions of Entrepreneur Witnesses****:* Meta left the depositions of Mssrs. Shea, Frazier, and Strain open because of the belated and deficient nature of their custodial files, and expects to continue some or all of those depositions once Entrepreneur has made complete custodial productions. In the July 29, 2026, Joint Case Management Statement ("CMS"), Entrepreneur stated that it would "not oppose reopening the affected depositions[.]" Dkt. No. 97 at 10. Meta reserves the right to keep open the deposition of Charles Muselli, which is set to occur on Thursday, August 6, 2026, because his production also appears to be incomplete.

Meta intends to serve and promptly schedule a 30(b)(6) deposition notice on Entrepreneur. Meta likely will, in short order, ask the Court for leave to take more than ten depositions to accommodate third-party depositions.

***Depositions of Three C Witnesses***: Meta has scheduled the depositions of two Chicken Soup custodians and five Cambronne Plaintiffs. As to the Cognella custodians, the parties have agreed to depose eight of the ten custodians during the week of August 24. Meta is awaiting a response to its request that Cognella make the two remaining witnesses available the first week in September. Depositions in this matter are expected to occur on a double- or triple-tracked basis in order to accommodate the more than thirty planned depositions of Plaintiffs' witnesses in roughly a month.

As with Entrepreneur, Meta intends to notice and promptly schedule 30(b)(6) depositions and to move the Court for leave to take more than ten depositions, if necessary.

Finally, Meta has not been informed of the scheduling of any deposition of Mr. Roller. Chicken Soup served a notice on Meta that it intended to serve a subpoena on Mr. Roller on July 28th, but did not provide any information indicating that the subpoena was actually served. Meta asks that the Court order Plaintiffs to notify Meta within one business day of the successful service of any third party subpoena recipient in this case.

Case No. 3:26-cv-03725-VC

META'S DISCOVERY STATUS REPORT

## II.    CUSTODIAL PRODUCTIONS

### A.    Meta's Productions

Meta represents that as of the filing of this statement it has produced 265,881 custodial documents to Entrepreneur and the Three C Plaintiffs, in addition to the full set of documents produced in *Kadrey*.

Meta has endeavored to produce custodial documents as promptly as possible in view of the Court's new directive that custodial documents be produced four days before depositions, even for those witnesses who were not previously designated as custodians.  Meta has reallocated resources and priorities in its document production pipeline to prioritize upcoming deponents to the maximum extent possible.

Regarding Mr. Subramanaian and Ms. Foss, those depositions occurred on July 21 and July 22, the two days following the July 20 conference where the Court enacted the new four-day custodial document production directive.  With respect to Mr. Subramanian, who was not a document custodian until the Court's directive on July 20, Meta is collecting and producing his custodial materials as quickly as possible.  Mr. Subramanian will sit for another deposition in his 30(b)(6) capacity and Meta will endeavor to produce his custodial documents four days before that deposition.  With respect to Ms. Foss, Meta will take all reasonable efforts to produce her custodial documents by August 28th.

Regarding Mr. Reis and Ms. Grosul, their custodial documents are not due until four days before those depositions are set to occur; neither deposition has been scheduled.  Meta will take all reasonable efforts to produce their custodial documents within those time frames when those depositions are set.

Regarding Mr. Heafield, Plaintiffs note that they will not be pursuing his deposition.  Because Mr. Heafield is not a deponent, his custodial documents will be produced before the close of fact discovery.

### B.    Entrepreneur's Productions

Entrepreneur's productions have been and remain woefully deficient.  Entrepreneur ignores that it was Court-ordered to produce each of the complete custodial files for Mr. Frazier, Mr. Shea,

and Mr. Strain on Thursday, July 23. The only custodial documents produced to Meta on that day were for Mr. Frazier. Mr. Frazier's custodial file did not include a single email dated before 2025, even though Mr. Frazier has been employed at Entrepreneur for nearly 20 years. Entrepreneur admits there was a problem and that it still has not rectified the deficiencies from Mr. Frazier's custodial file. Nor has it provided a date by which that deficiency will be addressed.

In violation of Judge Chhabria's order, Meta did not receive Mr. Shea's custodial production until Friday, July 24, 2026. Entrepreneur's initial production of Mr. Shea's custodial file did not include a single email communication after 2022. After Meta alerted Entrepreneur to the issue, Entrepreneur made additional productions on July 28, and July 30, the day of his deposition. Moreover, contrary to Entrepreneur's representation that it has "rectified the issue" with Mr. Shea's productions, the post-2022 email communications in the subsequent productions consisted largely of non-substantive newsletter or spam communications, which suggests that Entrepreneur still has not completed a proper search. Despite asserting that Mr. Shea's custodial file is comprised of "over 1.7 million documents," Entrepreneur has produced only 10,488 documents custodial to him—less than one percent of his custodial file, which again suggests Entrepreneur's production efforts are deficient. Further, Entrepreneur notes that it has at least one additional production for Mr. Shea but has not provided a date certain by when it will make that production.

Also in violation of Judge Chhabria's order, Entrepreneur made a production of Mr. Strain's custodial files on July 25, and continued to produce material for him on July 28 and July 30, the night before his deposition.

Moreover, all three of the custodians whose depositions Meta took last week testified to the existence of relevant, responsive, and important documents that Entrepreneur has not produced. For example, Mr. Shea testified that Entrepreneur [AEO].[3]

---

[3] Meta is redacting information related to deposition testimony out of an abundance of caution, even though it does not meet the criteria for sealing. Meta asked Entrepreneur's position on this issue in advance of the filing deadline, and, again, its counsel did not provide a response. Meta respectfully requests permission to discuss the redaction during tomorrow's hearing.

In addition, Entrepreneur's position confirms the inadequacy of its production. Entrepreneur implicitly concedes that its custodian productions include only materials from custodial "mailboxes." Entrepreneur made a similar concession in an email on July 28, 2026, in response to Meta's inquiry about the deficiencies in the custodial productions, including the lack of Slack messages in any of the custodial productions.[4] In that email, Entrepreneur confirmed that it did not collect Slack messages as part of custodial files and rather "separately collected" them "in response to specific requests." Entrepreneur has not responded to Meta's request for additional information about Slack messaging, and ignores that multiple deponents testified to using various forms of uncollected messaging, including Google chat and SMS text messaging, to perform work responsibilities. Entrepreneur has yet to explain why its custodial productions include only email communications even though its employees use other forms of messages to communicate in the course of their daily work, including on topics responsive to Meta's discovery requests.

Given the deficiencies in the custodial productions, Meta has repeatedly requested that Entrepreneur provide accelerated disclosures required in Section 4(a) of the ESI Protocol. Entrepreneur has ignored Meta's requests. Meta again seeks the required disclosures.

## C.    Three Cs' Productions

The Three C Plaintiffs have yet to produce a single custodial document. In total, the Three C Plaintiffs have produced 7,013 non-custodial documents, which appear to be comprised almost exclusively of their works and registration-related materials. Cognella and Cambronne do not appear to have produced communications of any kind, and CSS appears to have produced only seven email communications. Meta has raised with Plaintiffs its concern about the pace of Plaintiffs' productions, and is in the process of drafting additional RFPs to serve this week.

---

[4] Prior to the Court-ordered July 23, 2026, deadline to produce the custodial files of Mssrs. Shea, Frazier, and Strain ("July 23 Deadline"), Entrepreneur produced a small number of documents that appear to have come from Mr. Frazier's custodial files (but were not labeled as such despite the ESI Protocol requiring metadata show individuals "from whom the document was obtained"). Those documents included around 25 screenshots of Mr. Frazier's communications via Slack from 2016-present, and 9 emails (some of which were duplicates) that Mr. Frazier received from AI companies between 2016 and 2025. *See, e.g.*, EM018092-018110.

## III.   RULE 30(b)(6) DESIGNATION COVERAGE

Meta is working to identify witnesses for the topics in the EM and Three Cs 30(b)(6) notices by August 6 as ordered by the Court.  Meta will meet and confer with Plaintiffs regarding any potential remaining disputes and raise them with this Court at the next discovery status conference.[5]

## IV.   INITIAL DISCLOSURES

*Three C's Initial Disclosures*: The Three C Plaintiffs' initial disclosures are deficient. After Meta raised the Three C Plaintiffs' failure to sufficiently disclose their damages calculations, they served amended disclosures on July 20, 2026.  The amended disclosures reproduced their damages sections nearly verbatim—relying on the statutory ceilings as a computation, without identifying the number of works for which damages are claimed, the number of alleged §1202 violations, the time period at issue, or any other facts or figures upon which their damages are claimed. Plaintiffs provide no damages computation, as Rule 26 requires. Their disclosures also are inconsistent with their own complaints, which suggest they are pursuing statutory damages, and in the alternative, actual damages.  Plaintiffs provide no information regarding an actual damages computation.  Meta sent another round of related deficiency letters on August 3, 2026.  As of this filing, Plaintiffs' initial disclosures remain deficient.

## V.   WRITTEN DISCOVERY

***Discovery Served On Entrepreneur***: Meta has propounded four sets of RFPs on Entrepreneur (on January 5, 2026; April 17, 2026; June 10, 2026; and June 19, 2026) totaling 154 RFPs.  Entrepreneur served R&Os on March 6, 2026 (Set One); April 30, 2026 (supplemental Set One); June 1, 2026 (Set Two); July 20, 2026 (Set Three); and July 21, 2026 (Set Four).

Meta has propounded four sets of Interrogatories (on January 5, 2026, June 10, 2026, June 19, 2026, and July 28, 2026) totaling 20 interrogatories.  Entrepreneur served R&Os on March 6,

---

[5] Ms. Montalvo was prepared on numerous portions of her Rule 30(b)(6) topic, and at the start of her deposition, Plaintiffs were well aware that she would be put up for a second deposition date.. Plaintiffs spent time asking her about what she did to prepare and what she was prepared to testify about, but did not ask her any substantive questions on topics on which she was not prepared. Thus, Entrepreneur's suggestion that it spent 42 minutes "learn[ing]" that she was not prepared is belied by the facts and the transcript itself.

2026 (Set One), April 30, 2026 (supplemental Set One), and July 20, 2026 (Sets Two and Three). Responses to the fourth set are due on August 27, 2026.

Meta has propounded three sets of RFAs (on April 10, 2026; April 17, 2026; and June 10, 2026. totaling 198 RFAs. Entrepreneur served R&Os on May 22, 2026 (Set One); June 1, 2026 (Set Two); and July 20, 2026 (Set Three)). On July 31, 2026, Entrepreneur served Amended R&Os to the first set of RFA and amended its responses to Nos. 5, 6, 8-18, 33, 39, and 69.

***Discovery Served On The Three Cs***: Meta has propounded one set of RFPs (in June 2026) on each of the Three C Plaintiffs, who each served responses and objections ("R&Os") in July 2026.

Meta has propounded two sets of Interrogatories (on June 12, 2026 and on July 31, 2026) totaling 16 interrogatories. The Three C Plaintiffs served R&Os on July 20, 2026, for Set One, and the deadline to respond to Set Two is August 31, 2026.

Meta served its first set of RFAs on the Three Cs on July 31, 2026. Plaintiffs' responses are due on August 31, 2026.

## A. Interrogatories

### Meta Responses to Entrepreneur's Interrogatories

*Identification of Works in Training Data:* The identification of Plaintiffs' asserted and unasserted works in the training data is not as simple as the Plaintiffs would suggest it is. Meta has not identified comprehensive records tracing the lineage of every work from its acquisition to its use in training. If Meta had those kinds of records, the questions being asked by Plaintiffs would be substantially easier.

Meta has been transparent with Plaintiffs about these challenges and offered a solution of conducting text searches of Meta's produced training data that it has undertaken with significant expense. While Plaintiffs could have undertaken such activities themselves (as the Kadrey Plaintiffs did using the same expert that Plaintiffs have retained here), Meta voluntarily undertook the substantial expense of building the capability to search for Plaintiffs' asserted and unasserted works in the produced training data. To date this searching has cost Meta hundreds of thousands of dollars and taken tens of thousands of hours of computer time to run.

Also unacknowledged by Plaintiffs is Meta's provision of preliminary results of these searches to plaintiffs as the search process was ongoing.  The Entrepreneur and Three C's Plaintiffs have had those preliminary results for weeks now.

Meta has been undertaking these searches of asserted and unasserted works for the Plaintiffs even though Plaintiffs have not provided proof that they have rights to assert a large percentage of the works.  Meta requests that the Court order Plaintiffs to produce proof of ownership and/or rights to assert copyright infringement of all works that Plaintiffs have requested that Meta identify in response to Interrogatories.  Meta also requests that the Plaintiffs be ordered to pay a proportional share of the text searching costs for any works that Plaintiffs cannot produce proof of ownership and/or rights to assert copyright infringement.

Meta believes that Plaintiffs and/or their experts may have copies of metadata for the so-called "Shadow Libraries" (specifically LibGen and Anna's Archive) that would be helpful in further analyzing these questions.  Meta requests that Plaintiffs be ordered to produce that metadata to Meta by Friday, August 7th.

*Entrepreneur ROGs 19-20:* As discussed by Entrepreneur, Meta is serving supplemental responses to Interrogatories 19 and 20 today.  To the extent Entrepreneur has additional questions or would like to meet and confer further, Meta will do so.

*Three C's ROGs 1-7:*  Meta will provide supplemental responses to these interrogatories for the Chicken Soup and Cambronne, et al. works that have been produced to Meta for text searching by Tuesday, August 11th.  Given the number of works that were produced to Meta for the Cognella defendants (approximately 10X more than EM), that search is ongoing and Meta expects to be able to share preliminary results by next week.   Meta will provide supplemental responses for the Cognella defendants as soon as possible after that is completed.

*Entrepreneur's Responses to Meta's Interrogatories*: Meta repeatedly has informed Entrepreneur about the deficiencies in many of its interrogatory requests.

On March 20, 2026, Meta sent Entrepreneur a deficiency letter that identified meritless objections or responses in Meta's R&Os to Entrepreneur's first set of interrogatories, including in

Case No. 3:26-cv-03725-VC

META'S DISCOVERY STATUS REPORT

response to Interrogatory Nos. 1-3, 5-6, 8-10, 12.  In response, Entrepreneur supplemented its responses to Interrogatories 1-3, 5-6, and 8, but not to 9-10 and 12, which remain deficient:

- **Interrogatory Nos. 9 & 10**: Entrepreneur's responses to Interrogatory Nos. 9 and 10 are deficient because they do not fully provide the *factual* basis for Entrepreneur's market-harm and damages allegations and instead rest on Entrepreneur's objection that expert analysis is "not yet complete."  But the fact that expert analysis may be ongoing does not excuse Entrepreneur from providing the factual information currently known to it.  Entrepreneur received materials related to torrenting from the *Kadrey* action in January 2026.  It has had eight months to review this information and to answer Interrogatory Nos. 9 and 10.

- **Interrogatory No. 12**: Interrogatory No. 12 asks Entrepreneur to describe all facts supporting its allegation that Meta transmitted or uploaded to any third party any Asserted Work, or any portion thereof, during torrenting.  In response, Entrepreneur provides a general description of how torrenting protocols work but states that the specific details of Meta's torrenting activity are "within Meta's possession, custody, and control."   Entrepreneur is obligated to set forth all facts currently known to it supporting its distribution allegations, including any investigation or analysis it has conducted, and any third-party information it has obtained, which purport to support the allegations in its complaint.

On August 2, 2026, Meta sent Entrepreneur an email identifying specific deficiencies in additional responses, including to Interrogatory 16:

- **Interrogatory Nos. 16**:  Interrogatory 16 asks Entrepreneur to describe "all facts" on which it relies to support its allegations that Meta contributed to third-party infringement of any asserted work (in the case of the latter).  Entrepreneur's response provides a narrative of the allegations in its complaint and does not describe any factual basis for those allegations.  To the extent that Entrepreneur does not know any facts to support the allegations that are the subject of Interrogatory 16, it must state that.

*Three Cs*: Plaintiffs' responses to the first set of interrogatories are deficient, which Meta has detailed in writing to Cognella and shortly will to the other Plaintiffs. For example, Plaintiffs'

responses: pointed to documents without providing narrative responses to most Meta's requests; improperly relied on Rule 33(d) and "future productions" which may or may not contain documents responsive to Meta's interrogatories; and did not provide any factual basis for Plaintiffs' market-harm and damages allegations given that expert analysis is "not yet complete."

**B.      Requests for Production[6]**

*i.          "Outstanding Requests for Production with no commitment dates"*

Meta is working to produce documents with all reasonable speed.  Entrepreneur's request is unreasonable at this stage of the case, particularly in view of the requirements around custodial documents.  Each of Plaintiffs' requests seek, in part, data that will be obtained from custodians.  There is no feasible way for Meta to separate out the documents responsive to these categories from each of its custodians by a date certain (apart from its completion of document production as a whole).  Raising this issue 31 days prior to the close of discovery would not permit Entrepreneur to seek additional written discovery on any issues, and thus, setting such deadlines would shift resources and priorities away from key custodial deponent productions for little benefit to Entrepreneur.  With respect to depositions, Meta is of course endeavoring to meet the Court's order regarding production of custodial documents in advance of depositions, and to produce key documents relevant to Rule 30(b)(6) topics in advance of depositions on those topics.

*ii.         "Meta's nonresponse to Request No. 43"*

This request seeks disfavored "discovery on discovery", as it seeks documents about "preservation, retention, or destruction" of certain records related to Meta's torrenting activity that post-date the filing of the *Kadrey* lawsuit.  Meta has produced hundreds of gigabytes of data about its torrenting activity that it appears the Entrepreneur and Three C plaintiffs have apparently not bothered to review.  The request seeks "litigation hold notices," "preservation instructions," and communications "concerning the retention or destruction," which would almost entirely relate to documents that are privileged.

---

[6] In addition to the issues noted herein, the parties continue to confer on search terms and non-custodial sources, and will promptly raise any outstanding concerns with the Court as appropriate.

To the extent any responsive documents responsive to this request exist in the custodial collections, which extend to most if not all of the key persons known to have been directly involved in the acts of torrenting that the Plaintiffs are concerned about in these actions, they will be produced or, if protected by privilege and/or work product, logged on Meta's privilege log.

### iii.    *"Narrowing of Request Nos. 42, 60, and 61 without Entrepreneur's agreement"*

*Meta's Objections to Entrepreneur's RFPs*: Despite the extended and verbose discussion on this issue in Plaintiffs' report, Entrepreneur seeks relief about only a few matters.  Meta responds to each in turn:

Regarding RFP 60, Meta objected to the term "internal valuation or estimate of the contribution" because it was unclear to Meta what Plaintiffs intended from this particular term (e.g., quantitative, qualitative, economic valuations or estimates).  Plaintiffs make no attempt to clarify their position.   To be clear, Meta is conducting a reasonable search for documents responsive to this RFP and will produce non-privileged documents if any are identified.  With respect to models other than Llama models and Muse Spark, Meta does not intend to withhold documents about unreleased models, but in order to complete discovery within the compressed time frame necessitated by Plaintiffs later served document requests, Meta's objection is simply to the requirement that Meta search for every obscure experimental model that a researcher may have worked on at Meta over the past several years.  If documents related to non-Llama or Muse Spark models are identified in Meta's searches, Meta will not withhold production of those documents based on its objections.

Regarding RFP 61, Meta is not withholding information about the use case taxonomy data that Entrepreneur has requested.  Meta is producing the data it has identified after a reasonable search.  Meta's response to RFP 61 does not refer to the specific categories enumerated by Plaintiffs because, as Plaintiffs should know if they had reviewed the documents produced by Meta, those categories have evolved over time and may have changed names.  Meta is producing the use case taxonomy data responsive to RFP 61 that is located after a reasonable search regardless of the category names.  Regarding the "click-through" data referenced in Plaintiffs' report, Meta is trying to identify what data exists about "click-throughs" and will produce what information it can identify based on its reasonable search.

Case No. 3:26-cv-03725-VC

META'S DISCOVERY STATUS REPORT

Regarding the definition of META AI MODELS in Entrepreneur's RFPs, Entrepreneur has served requests that contain different definitions, one targeted at the Llama models and a second targeted at the Llama models and subsequent models, including Muse Spark and the unreleased model code named "Watermelon".  Meta has disclosed its search terms to Entrepreneur, which show that Meta is searching for materials that relate to all of the Llama models, to Muse Spark and to "Watermelon."  Meta is not withholding documents that Meta identifies through its reasonable searches that relate to any of the Llama models, Muse Spark, or "Watermelon."  Given this, Meta does not believe there is any dispute over this definition, but will be happy to meet and confer with Entrepreneur if it has any further concerns.

**Three C's RFPs:**  Regarding RFP No. 1, Meta had to clear third party confidentiality obligations before producing those documents.  They will be produced by August 7, if not sooner.  Regarding RFP Nos. 2-7, it is not Meta's fault that Plaintiffs waited until July 28th, 38 days before the close of fact discovery, to serve its first RFPs seeking documents other than the *Kadrey* summary judgment briefing.  Meta will timely object and respond to the Three C's RFPs and produce documents by the close of fact discovery.  Meta notes that several of the requests encompass documents already produced by Meta (including, for example, RFP No. 4 and RFP No. 7).

*Entrepreneur's Objections To Meta's RFPs:*

Meta is continuing to evaluate the substance of Entrepreneur's productions to date, but has identified certain deficiencies in the production and in Entrepreneur's R&Os. The vast majority of Entrepreneur's non-custodial documents consist of the asserted works, materials related to the copyright registration of some of the asserted works, some but not all author agreements, partnership and licensing agreements, and various spreadsheets of data.  But during a recent CMC, Entrepreneur represented that it is asserting claims as to its entire catalog, rather than solely the works asserted in Exhibit A.  Entrepreneur has not produced its entire catalog, nor the copyright registration materials for the same.

Entrepreneur's R&Os indicate that it is withholding categories of documents inappropriately:

- Entrepreneur has not amended its R&Os in response to RFP Nos. 27, 32-33, 35, 37-39, 42, 44, 52, 79-80 to address the issues Meta raised in its deficiency letter dated March 20, 2026 and the lack of merit to Entrepreneur's objections.

- Entrepreneur appears to be withholding responsive materials that it qualifies as "expert documents" or "expert reliance materials." *See* R&Os to RFP Nos. 113, 106, 109-113. It is unclear what "expert documents" or "expert reliance materials" are, or if Entrepreneur is using such designations to withhold responsive documents currently in its possession simply because an expert may rely on them.

- Entrepreneur has suggested it is not "reasonable" to, and thus they will not, produce all documents relied on when denying or admitting RFAs, even if (1) Meta has served RFPs asking for such documents; (2) the documents are in Entrepreneur's possession, custody, and control, and (3) those documents were relevant and probative to responding to the RFA requests. *See* RFP Nos. 81-82, 106.

- Entrepreneur has objected to certain RFPs about the alleged harm or injury it has suffered based on the claim that the requests mischaracterize Entrepreneur's "damages theory" notwithstanding the relevance of the requests. *See* RFP. Nos. 109-112, 129-130.

- In response to various RFPs, Entrepreneur has refused to produce "all" responsive documents and instead has agreed to produce documents "sufficient to show" the requested topic, even though the RFPs seek highly relevant, important information the production of which will not cause any undue burden. *See* RFP No. 120-122, 124-125, 132-134.

- Entrepreneur has objected to producing documents showing "why" it terminated or entered into various distribution agreements, and agreed to produce only documents reflecting the "the fact and timing" of those terminations or agreements. *See* RFP Nos. 135-137.

- Entrepreneur appears to be refusing to search for or produce documents related to the "AI chatbot" that it has created by objecting to the term as vague and ambiguous, and defining it to mean AI Generative technology created by third parties (including Meta AI). *See* RFP No. 143.

*Three Cs:* Meta is continuing to evaluate the Three C's R&Os, especially in light of the minimal amount of documents they have produced to date.

### C.    Requests for Admission

*Meta's Responses to Entrepreneur's RFAs*:

Meta agrees there is no ripe dispute regarding its responses to Entrepreneur's RFAs at this time for the Court to hear.

*Entrepreneur's Responses to Meta's RFAs*:

In a July 1, 2026, letter, Meta identified deficiencies in Entrepreneur's responses to RFA Nos. 2-18, 23, 33-34, 39, 69, 81, 83, 89-91, 98.  Entrepreneur declined to amend its responses to RFA Nos. 2-4, 7, 23, 34, 81, 83, 89-91, and 98.  These responses, and Entrepreneur's amended response to RFA No. 8, remain deficient, including because they include unnecessary commentary that, in many cases, attempts to re-write the RFA and blunt the admissions or caveat the denials.   Given the impasse, Meta intends to move on some or all of Entrepreneur's responses to Meta's first set of RFAs:

- **RFA Nos. 2, 17-18, 23**: Entrepreneur has denied each of these RFAs, which ask for admissions related to knowledge of the existence of documents or information relating to any declines in sales or lost opportunities due to Meta's purported conduct.  Entrepreneur caveats those denials with a non-responsive narrative explanation about being generally aware of documents showing declines in sales of the asserted works and, separately, information about the timing of the development of AI tools.

- **RFA No. 7**: Entrepreneur neither answers nor denies RFA No. 7, which asks Entrepreneur to admit that for each asserted work more than fifty percent of all gross revenue was generated within the three years following the publication date.  Entrepreneur objected to the phrase "all gross revenue" as vague and ambiguous as to whether it encompasses only direct unit sales revenue to Plaintiffs or also includes revenue from subsidiary rights, licensing, digital editions, subscriptions, and other revenue streams associated with the Asserted Works.  Entrepreneur did not withdraw the objection after Meta explained that all gross revenue includes all of these revenue streams.  Nor has Entrepreneur amended its

original response, which states that it does not know or does not have information sufficient to admit or deny and would supplement.

- **RFA No. 8**: Entrepreneur originally admitted that no third party had offered it compensation to use any of the asserted works to train generative AI. Entrepreneur amended its response to change the admission to a denial, based on an objection to the phrase "offered you compensation" that it did not originally assert (and therefore has waived).

- **RFA No. 33 & 34**: Entrepreneur amended its answer to RFA No. 33 to deny that all of the asserted works are available to be read online either for free or for a subscription. Entrepreneur also denied RFA No. 34, which asked the same as to serials. In its amended response to RFP No. 33, Entrepreneur appears to concede that its denials are based on standing on an objection that the request "conflates authorized availability with unauthorized availability."

- **RFA No. 69**: RFA 69 seeks an admission that Entrepreneur is not currently aware of any documents evidencing that any third party received from Meta any files or data that are substantially similar in protected expression to any Asserted Work. Entrepreneur originally denied the Request due to the "incomplete state" of Meta's discovery. In its amended response, Entrepreneur continues to deny it based on an ongoing "investigation, discovery, and expert analysis." It has not identified or produced any documents that would provide the basis for its denial.

- **RFA Nos. 89-91**: Entrepreneur admits the matters requested but then appends additional qualifications, commentary, or other extraneous statements. Because the requests have been admitted, the additional material is nonresponsive and serves only to obscure the admissions.

Meta has identified additional deficiencies with Entrepreneur's responses to the second and third sets of RFAs. Meta has requested Entrepreneur amend responses to the RFA Nos. 107-165, 168, 170 175-177, 182, 194-98, many of which are deficient for the improper inclusion of non-responsive narrative that caveats the admission or denials. The parties are continuing to meet and confer in an effort to narrow the dispute.

## V.    RELATED ACTIONS AND SCHEDULING

On July 14, 2026, *Sullivan v. Meta Platforms, Inc.*, No. 4:26-cv-06793 (N.D. Cal.), filed July 2, 2026 on behalf of textbook authors, was noticed as related to this action and to the other related actions on the *Kadrey* docket.  At the July 31, 2026 case management conference, the Court deferred the question of how Sullivan will proceed, indicated that a schedule for that action will be addressed at the next conference, and directed that discovery in that action begin in the interim by way of Meta re-producing its prior productions from the related matters (as had been done to get discovery started in *Entrepreneur Media* and *Three C*).  A protective order, an ESI protocol, and a proposed schedule are to be submitted to the Court in advance of the further case management conference set for August 14, 2026 at 1:00 p.m.

In terms of the protective order, Meta believes it is appropriate to enter substantially the same protective order in *Sullivan* as was entered in the *Entrepreneur Media* and *Three C*. Meta will confer with counsel for the *Sullivan* plaintiffs to implement that approach forthwith. With respect to the ESI Protocol, there may be some relatively minor adjustments to the *Entrepreneur Media* and *Three C* protocols to account for the fact that the *Sullivan* plaintiffs will not necessarily need new custodians, and Meta will confer with counsel for the *Sullivan* plaintiffs to discuss those issues and seek to agree on an ESI Protocol promptly. Finally, the parties are discussing the issue of the case schedule and will make a submission on that as directed by the Court.

Case No. 3:26-cv-03725-VC

Dated:  August 4, 2026

Respectfully Submitted,

By /s/ Karen L. Dunn

**DUNN ISAACSON RHEE LLP**
Karen L. Dunn (pro hac vice)
Jessica E. Phillips (pro hac vice)
Kyle N. Smith (pro hac vice)
401 9th Street NW Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

**COOLEY LLP**
Bobby A. Ghajar (198719)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com
cghazarian@cooley.com

Mark R. Weinstein (193043)
Elizabeth Lee Stameshkin (260865)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: mweinstein@cooley.com
lstameshkin@cooley.com

Kathleen R. Hartnett (314267)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2071
Facsimile: (415) 693-2222
Email: khartnett@cooley.com

Phillip E. Morton (pro hac vice)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
Angela L. Dunning (212047)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

Email: adunning@cgsh.com

*Attorneys for Defendant Meta Platforms, Inc.*

META'S DISCOVERY STATUS REPORT