**STRIS & MAHER LLP**
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
stris.com

August 18, 2026

***E-Filed***

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E–15th Floor
450 Golden Gate Avenue San Francisco, CA 94102

Re: Plaintiffs' Discovery Status Report and Letter Brief re Meta's Failure to Supplement Written Discovery in *Cognella, Inc. v. Meta Platforms, Inc.*, No. 3:26-cv-04053-VC, *Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*, No. 3:26-cv-02333-VC; *Cambronne, et al., v. Meta Platforms, Inc.*, No. 3:26-cv-03725-VC

Dear Judge Hixson:

Plaintiffs Cognella, Inc. ("Cognella"), Chicken Soup for the Soul, LLC ("Chicken Soup"), and the Cambronne Plaintiffs (collectively, the "Three Cs") respectfully submit this discovery status report and letter brief in advance of the August 19, 2026 discovery conference. The Three Cs attempted to present these issues to the Court jointly with Meta Platforms, Inc. ("Meta"). On August 17, 2026, the Three Cs provided Meta their affirmative portion of a joint letter brief concerning Meta's failure to supplement its interrogatory responses and asked Meta to provide its inserts. Meta declined to combine the parties' submissions and elected to prepare and file its own separate status report. The Three Cs served their affirmative position hours before the filing deadline and received no substantive response from Meta; Meta instead transmitted its own draft status report approximately 30 minutes before the deadline and filed it separately. Consistent with the Court's direction at the last conference, the Three Cs submit this statement, which sets out (I) their affirmative position on Meta's failure to supplement written discovery; (II) their response to the mischaracterizations of the discovery record in Meta's separately filed status report; and (III) their requested relief.

This dispute concerns Defendant's responses to Plaintiffs' First Set of Interrogatories (attached as Exhibits A, B, and C). Plaintiffs first identified the deficiencies in Meta's interrogatory responses by letter on June 30, 2026. The parties conferred telephonically on July 23, after which Plaintiffs confirmed by email on July 24 Meta's agreement to supplement during the week of July 27; Meta again represented at the August 4 conference that it would supplement the following week, but Plaintiffs have received no supplemental responses.

## I. PLAINTIFFS' AFFIRMATIVE POSITION: META'S FAILURE TO SUPPLEMENT WRITTEN DISCOVERY

The Three Cs submit this discovery status statement regarding Meta's failure to provide substantive supplemental written discovery responses. The parties have met and conferred in good faith but have not resolved the dispute.

Timing remains critical. Fact discovery closes September 4, 2026, opening expert reports are due September 18, and the related actions proceed on a coordinated deposition schedule in which the parties generally have one opportunity to examine a witness. Written discovery therefore must be produced early enough to be used in depositions, targeted follow-up discovery, and expert work.

**Requested relief.** The Three Cs request an order requiring Meta, by August 24, 2026, to serve complete supplemental responses to the outstanding interrogatories as written and without unilateral definitional revision, including work-by-work information reasonably available to Meta concerning the acquisition, source, use, processing, CMI treatment, and torrenting of Plaintiffs' works.

The Three Cs' written discovery targets threshold facts: which copyrighted works Meta obtained; their sources and manner of acquisition; how Meta processed and used them; whether Meta removed or altered copyright management information ("CMI"); and what Meta did with works obtained from shadow libraries. Meta's initial responses did not provide substantive work-by-work answers. Meta represented that supplemental interrogatory responses would be served by July 31, 2026, and again represented at the August 4 status conference that a supplement would be forthcoming. None has been received.

### A. Meta Should Respond Using Plaintiffs' Definitions

Meta has objected to or narrowed several defined terms rather than answering the requests as written. Those unilateral revisions materially restrict the discovery sought. For example, for CMI, Plaintiffs defined the term for discovery purposes and did not ask Meta to make a legal determination as to whether particular information ultimately qualifies for statutory protection. Meta should answer using the supplied definition or identify any genuine ambiguity.

Likewise, Meta should not limit "CORPORA and DATASET(S)" to a self-selected list, or "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" only to publicly released Llama models and Muse Spark. Plaintiffs' definitions also encompass relevant internal and experimental models and other collections within the scope of the requests. Nor should Meta narrow "WEB SCRAPING" to public-internet text gathered for a particular training purpose or through SpiderMate, or limit "SHADOW LIBRARY" to only a handful of identified repositories. Meta

should conduct reasonable searches and supplement under Plaintiffs' definitions rather than substitute narrower ones.

**B. The Requested Information Is Core Discovery Within Meta's Control**

Meta selected, acquired, stored, processed, trained on, torrented, or otherwise used the datasets at issue. It is therefore best positioned to identify which of Plaintiffs' works it obtained, the source and manner of acquisition, the models or datasets in which the works were used, and the processing applied.

**Interrogatory Nos. 1-7**

Interrogatory Nos. 1–3 seek the works Meta obtained from the web, including when and how each was obtained and its source. Meta should provide reasonably available work-by-work information; if information cannot be determined after a reasonable search, Meta should say so and describe the search undertaken. For example, Interrogatory No. 1 asks the most basic question in the case—"Which PLAINTIFFS' WORKS did YOU obtain from a SHADOW LIBRARY?"—yet Meta did not identify a single work. It responded only that it "is undertaking a reasonable investigation," that it "may need additional information, including the text of the PLAINTIFFS' WORKS," and that it "will supplement this response on a rolling basis"—the identical non-answer Meta gave to every interrogatory, with no supplement served in the months since. And the "text of the PLAINTIFFS' WORKS" Meta claims to need has already been provided: Plaintiffs supplied known ISBNs, the text of more than 444 Chicken Soup and Cambronne works, and text-searchable files for roughly 3,000 Cognella works. Meta's own stated precondition to answering is satisfied, and Meta still has not answered.

Meta's response states that it will only be searching its files for Plaintiffs' works that Meta downloaded from Anna's Archive, Books3 and LibGen. But Plaintiffs asked Meta to identify all works obtained from any SHADOW LIBRARIES, which include the aforementioned repositories, but are not limited to those alone. Meta needs to search which works it obtained from any online repository or electronic collection or source of digital copies of copyrighted books, articles, media and similar materials, ***including but not limited to*** the datasets commonly known as Anna's Archive, Bibliotik, Books3, C4, Library Genesis (or LibGen), Sci-Hub, The Pile, Z-Library, Bespoke, CORE, UCSF, NDLI, and m2c2, SpiderMate GitHub, CCNews, Deeper Web Crawl, and CommonCrawl.

Similarly, in response to No. 2, Meta may not limit its search of Plaintiffs' works it obtained through WEB SCRAPING to a search of Meta's SpiderMate web archiver. Meta's unilateral limitations outlined in response to ROG Nos. 1 and 2 are likewise unwarranted for any response to ROG 3. Meta must identify when and how it obtained each work from a SHADOW LIBRARY or WEB SCRAPING, and identify the source or sources, date or dates of acquisition, and means or method of acquisition.

Interrogatory Nos. 4–5 ask which works were used, in whole or in part, to train relevant Meta models and when and how they were used. This information is central to the claims and expert discovery. Meta should provide the work-by-work information reasonably available from

metadata review, text matching, or other matching processes. Meta has objected to Interrogatory No. 4 arguing that the term "train" is vague and ambiguous and that it will interpret the term "train" as "the act of pre-training and/or fine-tuning a large language model." Plaintiffs do not accept Meta's unilateral narrowing of this interrogatory. Deferring a substantive response to an unspecified future date is not compliant with Rule 33, which does not permit a party to avoid answering an interrogatory by promising future supplementation. The response to No. 5 suffers the same deficiencies. Plaintiffs request a complete response to identify, on a work-by-work basis, each instance when a work was used to train an LLM model (as defined by Plaintiffs, not Meta), including when and how.

Interrogatory No. 6 asks Meta to identify each work from which it removed or altered CMI. Meta should provide a substantive response based on its records, processing pipelines, code, documents, and knowledgeable witnesses. This is a straightforward ROG calling for a straightforward answer asking Meta to identify each work from which it removed or altered any Copyright Management Information.

For Interrogatory No. 7, the parties previously conferred and Plaintiffs understood Meta would provide an overview of what it did with each Plaintiff work obtained from a shadow library—including acquisition, retention, storage, processing, tokenization, duplication, CMI treatment, modification, distribution, torrenting, incorporation into a model, and/or deletion. Plaintiffs accepted an overview as a compromise to determine whether greater specificity would be necessary. Meta should provide that promised supplementation, or identify where the same information is supplied in its other supplemental responses.

## II. THE THREE Cs' DISCOVERY STATUS AND RESPONSE TO META

Because Meta declined to file jointly and instead submitted its own separate status report, the Three Cs briefly set the record straight. Meta's report presents a distorted snapshot of discovery: it conflates discovery that is presently due with discovery that is not yet due, omits the volume the Three Cs have already produced, and disregards Meta's own repeated late custodial productions in this coordinated litigation.

### A. Custodial Productions of the Three Cs

The Three Cs have undertaken substantial custodial discovery on an expedited schedule while simultaneously preparing numerous witnesses for deposition.

To date, Plaintiffs in the Three Cs have produced 359,423 records to Meta, as follows:

1. In *Chicken Soup for the Soul*, Chicken Soup has produced 249,041 records through productions dated June 22 (444 records), July 20 (956 records), August 10 (18,922 records), August 11 (23,808 records), and August 17 (204,911 records). These productions include the custodial files of Amy Newmark and William Rouhana.

2. In *Cambronne*, the Cambronne Plaintiffs have produced 104,794 records through productions dated June 24 (7 records) and August 17 (104,787 records). These productions include custodial data of John Carreyrou, Matthew Sacks, and a partial production of Lisa Barretta's documents.

3. In *Cognella*, Cognella has produced 5,588 records through productions dated July 15 (5,419 records) and July 20 (169 records).

Plaintiffs in the Three Cs are working diligently to comply with their discovery obligations and this Court's orders. Plaintiffs have substantially completed collecting documents from twenty custodians (five in *Cambronne*; ten in *Cognella*; and five in *Chicken Soup for the Soul*). Plaintiffs have instructed their discovery vendor to prioritize the production of documents in accordance with the deposition schedule in these cases. And as Plaintiffs have explained to Meta, recent delays in production are attributable entirely to data processing times associated with the large volumes of data that Meta has requested and that Plaintiffs have agreed to produce. Plaintiffs' discovery vendor has staff dedicated 24/7 to preparing Plaintiffs' document productions in response to Meta's requests as soon as possible. Where processing timelines make strict compliance with the Court's four-day order impracticable for a particular witness, Plaintiffs will make rolling productions and confer with Meta on scheduling—as they already did in offering to reschedule Mr. Rouhana's deposition to accommodate his custodial production, an accommodation Meta declined.

Meta is in no position to complain of production timing given its own conduct. Meta produced Konstantin Bashlykov's custodial file less than thirteen hours before his August 6 deposition, following a 238,518-record production only three days earlier; produced Ms. Montalvo's custodial file approximately six days after her deposition; and produced Ms. Wang's custodial materials shortly before her deposition. The timing pressures Meta attributes to the Three Cs are a shared feature of this compressed, coordinated schedule—not a one-sided failing.

Importantly, the Three Cs have provided Meta documentation intended to facilitate Meta's identification of Plaintiffs' works in Meta's own datasets. By the August 4 status statement, Plaintiffs had provided known ISBNs for their works; text for more than 444 Chicken Soup and Cambronne works; and text-searchable files for approximately 3,000 Cognella works. Those efforts underscore that the present dispute is not a lack of cooperation by the Three Cs, but Meta's failure to provide the corresponding substantive information uniquely or principally within Meta's possession concerning what Meta obtained and used.

**B. The Three Cs' Supplemental Written Discovery Responses**

Meta's complaints stem from its own decision to propound overbroad "all facts regarding all persons" interrogatories and then reject responses that supply the material information. The Three Cs have answered, and are supplementing, with the material facts — which is all the law requires.

Contention interrogatories "are often overly broad and unduly burdensome when they require a party to state 'every fact' or 'all facts'"; they are properly read to reach only "the material or principal facts," and courts weigh that a defendant "presumably ha[s] access to most of the

evidence about [its] own behavior." *Haggarty v. Wells Fargo Bank, N.A.*, No. 10-2416 CRB (JSC), 2012 WL 4113341, at *2 (N.D. Cal. Sept. 18, 2012). An interrogatory seeking "all facts" supporting a contention is "overly broad and unduly burdensome on [its] face." *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008). And even when a response is ordered, the responding party owes only "the material facts," not "every single fact." *Former S'holders of Cardiospectra, Inc. v. Volcano Corp.*, No. 12-CV-01535-WHO, 2013 WL 5513275, at *2 (N.D. Cal. Oct. 4, 2013). So too for demands for "all facts," "all facts and circumstances," and "all documents." *Largan Precision Co. v. Samsung Elecs. Co.*, No. 13-CV-2740 DMS (NLS), 2015 WL 11251730, at *3 (S.D. Cal. May 5, 2015).

Measured against that standard, the Three Cs' responses to Meta's interrogatories to Plaintiffs are sufficient and are being supplemented. For Interrogatory Nos. 1–3 and 6, Cognella directed Meta to the ownership records, copyright registrations, and publishing and licensing agreements, and has supplemented with the agreements and the texts of the works. Nos. 5 and 8 restate information already provided, now supplemented with a fuller statement of the rights violated and the channels where the works appeared. Nos. 7, 9, and 11–14 have been answered by supplement, notwithstanding their "all facts" and "complete basis" defects. The responses Meta labels deficient are, in substantial part, directed to its second and third sets, not due until August 31 and September 4, 2026.

This does not undercut Plaintiffs' own motion. Plaintiffs' interrogatories seek discrete, bounded categories of material fact uniquely within Meta's possession—which works Meta acquired, from what sources, how used, and from which it removed CMI—the information the party with sole access to its own datasets must provide. *Haggarty*, 2012 WL 4113341, at *2.

**C. Initial Disclosures and Damages**

Meta's suggestion that the Three Cs' initial disclosures are deficient for failing to provide a damages computation misunderstands the relief sought. Plaintiffs' amended initial disclosures identify the categories of relief they seek, including statutory damages under 17 U.S.C. § 504(c) and § 1203(c). Statutory damages are fixed by statute—per work and per violation—and are elected in lieu of actual damages and profits; they are not derived by computation. To the extent Meta seeks a computation of actual damages, that figure cannot be calculated without expert analysis, and expert discovery has not yet begun. Plaintiffs will supplement under Rule 26(e) as their analysis develops.

## III. PLAINTIFFS' REQUESTED RELIEF

Plaintiffs' request an order requiring that Meta serve, by August 24, 2026, complete supplemental responses to the Three Cs' Interrogatories Nos. 1-7 as written and without definitional adaptation or revision, including work-by-work information reasonably available after a reasonable search and identifying any information Meta contends cannot be determined and the basis for that contention.

Dated: August 18, 2026

Respectfully Submitted,

By _/s/ Elizabeth Brannen_

**STRIS & MAHER LLP**
Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299

**FREEDMAN NORMAND FRIEDLAND LLP**
Devin (Velvel) Freedman (*pro hac vice* forthcoming)
vel@fnf.law
Kyle Roche (*pro hac vice*)
kroche@fnf.law
155 E. 44th Street, Ste 915
New York, NY 10017
T: (646) 494-2900

*Attorneys for Plaintiffs*

# EXHIBIT A

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865)
lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000

BOBBY A. GHAJAR (198719)
bghajar@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400

PHILLIP E. MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| CHICKEN SOUP FOR THE SOUL, LLC,<br>Plaintiff,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 3:26-cv-02333-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. Vince Chhabria |

**PROPOUNDING PARTY:** **PLAINTIFF CHICKEN SOUP FOR THE SOUL, LLC**

**RESPONDING PARTY:** **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:** **ONE**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and Local Rule 33 of the United States District Court for the Northern District of California, Defendant Meta Platforms, Inc. ("Meta") hereby objects and responds as follows to Plaintiff Chicken Soup For The Soul, LLC's ("Plaintiff") First Set of Interrogatories ("Interrogatories").

## I. Responses to All Interrogatories

**1.** Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.** To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 61) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

**3.** Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II. Objections to Instructions and Definitions

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions.

**1.** Meta objects to the definition of "COPYRIGHT MANAGEMENT INFORMATION" to the extent it calls for a legal conclusion. Specifically, a determination of whether any particular data, text, or metadata constitutes "Copyright Management Information" under 17 U.S.C. § 1202(c) is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular information qualifies as legally protected Copyright Management Information and a determination of such is not within Meta's possession, custody, or control. Meta further objects to this definition as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it includes identifying information for persons that "created" copyrighted works.

**2.** Meta objects to the definition of "CHICKEN SOUP FOR THE SOUL WORK(S)" as overbroad, unduly burdensome and disproportionate to the needs of the case to the extent it puts the burden on Meta to determine which works purportedly "belong" to CHICKEN SOUP FOR THE SOUL. Meta further objects to the term "belong" as vague and ambiguous as it is unclear what form of possession or ownership is intended by the use of this term. Without agreeing that CHICKEN SOUP FOR THE SOUL possesses or owns any valid copyright in any specific works, Meta will interpret the term CHICKEN SOUP FOR THE SOUL WORKS to refer to the specific works identified in Exhibit A to the Interrogatories.

**3.** Meta objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent these definitions are inconsistent with and otherwise seek to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the forthcoming ESI Order.

**4.** Meta further objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent they seek to expand or alter the scope of the Federal Rules of Civil Procedure, the Local Rules of this Court, or the forthcoming ESI Order. Meta further objects to these definitions to the extent they seek Meta to produce documents that are not reasonably

accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), which are unduly burdensome to preserve and search, or which otherwise, under the proportionality factors, should not be preserved.

**5.** Meta objects to the definitions of "CORPORA" and "DATASET(S)" as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent they refer to non-textual materials that are not relevant to any party's claims or defenses and to the extent they refer vaguely to "other content." Without any admission with respect to content or nature, Meta will construe the term "DATASET(S)" to refer to Anna's Archive, Bibliotik, Books3, C4, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

**6.** Meta objects to the definition of "INFRINGE," "INFRINGED," and "INFRINGES" to the extent it calls for a legal conclusion. Specifically, a determination of whether any conduct constitutes copyright infringement is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular conduct infringes on a legally protected work and a determination of such is not within Meta's possession, custody, or control.

**7.** Meta objects to the definition of "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "any machine learning model, neural network, generative artificial intelligence model, transformer model, or similar computational system trained on large quantities of text or other data" is overly broad and encompasses tools and services that are not relevant to any party's claims or defenses. Meta further objects to this definition to the extent that it purports to require Meta to produce documents or information concerning large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiff's allegedly copyrighted works. Meta further objects that the phrase "process, predict, generate, summarize, classify, or otherwise manipulate natural language or content" renders the definition vague, ambiguous, confusing, and overly broad. Meta will construe "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" to mean the publicly released Llama 1, Llama 2, Llama 3, Llama 4, and Muse Spark models.

**8.** Meta objects to the definition of "META," "YOU," and "YOUR" as overbroad,

unduly burdensome, and disproportionate to the needs of the case. Meta will construe "META," "YOU," or "YOUR" to mean Meta Platforms, Inc.

**9.** Meta objects to the definition of "PIRATED," "PIRACY," and "PIRATED MATERIAL" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works.

**10.** Meta objects to the definition of "SHADOW LIBRARY" and "SHADOW LIBRARIES" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent it refers to non-textual materials that are not relevant to any party's claims or defenses and to the extent it refers vaguely to "media and similar materials." Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "DATASETS." Without any admission with respect to content or nature, Meta will construe the term "SHADOW LIBRARY" to refer to certain of the third-party datasets identified by Plaintiff, namely Anna's Archive, Bibliotik, Books3, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

**11.** Meta objects to the definition of "WEB SCRAPING" as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the extensive list of undefined terms, including "extraction, collection, copying, downloading, crawling, indexing, harvesting, or retrieval" and "aggregation, storage, processing" are susceptible to multiple definitions, rendering this definition unintelligibly ambiguous. Meta further objects to the phrase "images, metadata, or other content" as overbroad and disproportionate to the needs of the case, to the extent it refers to training data other than text data that is not relevant to any party's claims or defenses. Meta further objects to this definition to the extent that it incorporates the

objectionable portions of the terms "SHADOW LIBRARIES" and "LARGE LANGUAGE MODELS." Meta will construe "WEB SCRAPING" to mean the automated collection of text data from the public internet for use in training the Meta Language Models (as construed above).

## III. General Objections

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

**1.** Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

**2.** Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.

**3.** Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the forthcoming ESI Order and the Protective Order entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta. To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

**4.** Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

**5.** Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody, or control; (b) not maintained by Meta in the normal course of business; (c) already in the

possession, custody, or control of Plaintiff; (d) readily available through public sources or from sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiff than to Meta. Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

**6.** Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Interrogatories, Meta will not produce information or documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the forthcoming ESI Order. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the forthcoming ESI Order and the Protective Order entered in this action.

**7.** Meta objects to the Interrogatories to the extent that they purport to require Meta to provide information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party. Meta will not provide information or documents subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

**8.** Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

**9.** Meta objects to the Interrogatories to the extent that they seek confidential, trade secret, competitively sensitive, business, financial, or other proprietary information. To the extent

documents or information containing any such information are nonprivileged, responsive to the Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the forthcoming ESI Order and the Protective Order entered in this action. Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively sensitive information that is neither relevant nor proportional to the needs of this action.

**10.** Meta objects to the Interrogatories to the extent they seek documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

**11.** Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiff as duplicative, overbroad, unduly burdensome, and oppressive.

**12.** Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

## IV. Objections and Responses to Individual Interrogatories

**INTERROGATORY NO. 1:**

Which CHICKEN SOUP FOR THE SOUL WORKS did YOU obtain from a SHADOW LIBRARY?

**RESPONSE TO INTERROGATORY NO. 1:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, YOU, and SHADOW LIBRARY.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, Meta downloaded as part of Anna's Archive, Books3 and LibGen for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 2:**

Identify each CHICKEN SOUP FOR THE SOUL WORK that YOU obtained through WEB SCRAPING.

**RESPONSE TO INTERROGATORY NO. 2:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORK, YOU, and WEB SCRAPING.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 3:**

For each CHICKEN SOUP FOR THE SOUL WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING, when and how did you obtain it? Identify and describe each instance in detail, including the source or sources, date or dates of acquisition, and means or method of acquisition.

**RESPONSE TO INTERROGATORY NO. 3:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORK, YOU, SHADOW LIBRARY, and WEB SCRAPING.

Meta objects to this interrogatory to the extent it is duplicative of information sought by Interrogatory Nos. 1 and 2. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail, including" seeks unspecified information beyond the recited request for "the source or sources, date or dates of acquisition, and means or method of acquisition" of data obtained from a SHADOW LIBRARY or WEB SCRAPING.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1 and 2, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any (1) Meta downloaded as part of Anna's Archive, Books3, and/or LibGen for use in training Meta's LARGE LANGUAGE MODELS and (2) Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS. Meta will provide reasonably available information regarding the source, timing, and method of download. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 4:**

Which CHICKEN SOUP FOR THE SOUL WORKS did YOU use, in whole or in part, to train any of YOUR LLM MODELS?

**RESPONSE TO INTERROGATORY NO. 4:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined. Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, were used to pre-train Meta's LLM MODELS. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 5:**

For each CHICKEN SOUP FOR THE SOUL WORK that YOU used, in whole or in part, to train any of YOUR LLM MODELS, when and how did you do so? IDENTIFY and describe each instance in detail.

**RESPONSE TO INTERROGATORY NO. 5:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined. Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model. Meta further objects to the phrase "how did you do so?" as it does not specify which actions the interrogatory seeks information about. Meta will interpret the phrase "how did you do so?" as seeking a high-level general description of the way a work like a CHICKEN SOUP FOR THE SOUL WORK would be used in the pre-training process of Meta's LLM MODELS. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail" seeks unspecified information about the use of CHICKEN SOUP FOR THE SOUL WORKS in pre-training. Meta will interpret this phrase to seek a high-level general description of the way a work like a CHICKEN SOUP FOR THE SOUL WORK would be used in the pre-training process of Meta's LLM MODELS.

Subject to and without waiving the foregoing objections, as stated for Interrogatory No. 4, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, that were used to pre-train Meta's LLM MODELS and Meta will provide a high-level general description of the way a work like a CHICKEN SOUP FOR THE SOUL WORK would be used in the pre-training process of Meta's LLM MODELS. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 6:**

IDENTIFY each CHICKEN SOUP FOR THE SOUL WORK from which YOU removed or altered any COPYRIGHT MANAGEMENT INFORMATION.

**RESPONSE TO INTERROGATORY NO. 6:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, YOU, and COPYRIGHT MANAGEMENT INFORMATION.

Meta further objects to this interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information about CHICKEN SOUP FOR THE SOUL WORKS that were not used as part of Meta's pre-training of large language models.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify for which CHICKEN SOUP FOR THE SOUL WORKS identified in its responses to Interrogatory Nos. 1 and 2 Meta is able to reasonably determine that COPYRIGHT MANAGEMENT INFORMATION was removed or altered by Meta. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 7:**

Explain what you did with each CHICKEN SOUP FOR THE SOUL WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING or that YOU used, in whole or in part, to train any of YOUR LLM MODELS. For each CHICKEN SOUP FOR THE SOUL WORK, your explanation should state whether, when, and how it was:

(a) retained, stored, or preserved;

(b) ingested;

(c) processed;

(d) tokenized;

(e) duplicated or reproduced;

(f) de-duplicated;

(g) stripped of COPYRIGHT MANAGEMENT INFORMATION;

(h) modified or altered in any other way;

(i) distributed;

(j) torrented;

(k) incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters; or

(l) deleted.

**RESPONSE TO INTERROGATORY NO. 7:**

Meta incorporates by reference its objections and definitions above, including to the terms CHICKEN SOUP FOR THE SOUL WORKS, SHADOW LIBRARY, WEB SCRAPING, COPYRIGHT MANAGEMENT INFORMATION, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory as compound because it comprises at least twelve subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure. Meta further objects to the terms "[e]xplain what you did", "processed", "tokenized", "stripped", "modified or altered in any other way", "incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters" as vague and ambiguous. Meta further objects to this interrogatory to the extent it seeks information sought by Interrogatory Nos. 1-6. Meta further objects to this interrogatory to the extent it requires Meta to create or re-create information or data that is not in Meta's possession, custody, or control.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1-6, Meta is undertaking a reasonable investigation to identify which CHICKEN SOUP FOR THE SOUL WORKS, if any, were downloaded and used to pre-train Meta's LLM MODELS. Meta will provide a high-level general description of the way a work like a CHICKEN SOUP FOR THE SOUL WORK would be utilized by Meta in conjunction with Meta's LLM MODELS. As previously communicated to counsel for CHICKEN SOUP FOR THE SOUL, Meta may need additional information, including the text of the CHICKEN SOUP FOR THE SOUL WORKS, in

order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 8:**

For each response to every Request for Admission served on YOU by Plaintiff in this case that is not an unqualified admission, IDENTIFY the following information:

(a) The number of the Request for Admission;

(b) All facts on which YOU base your response;

(c) All PERSONS who have knowledge of those facts; and

(d) All DOCUMENTS that support YOUR response along with the custodian of those DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 8:**

Meta incorporates by reference its objections and definitions above, including to the terms YOU and DOCUMENTS.

Meta further objects to this interrogatory as compound because it comprises multiple subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure. Meta will respond to this interrogatory to the extent required by Local Rules 33-2 and 36-2.

Meta is willing to meet and confer regarding the appropriate scope, if any, of a response to this interrogatory.

Dated: June 22, 2026

COOLEY LLP

By: */s/ Phillip E. Morton*
Phillip E. Morton

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON LLP
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

I am a citizen of the United States and a resident of the State of New York. I am employed in New York County, State of New York. I am over the age of eighteen years, and not a party to the within action. My business address is Dunn Isaacson Rhee LLP, 11 Park Place, New York, New York 10007. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES [NOS. 1–8]**

☒ (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Dunn Isaacson Rhee LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

FREEDMAN NORMAND FRIEDLAND LLP
Kyle Roche (*pro hac vice*)
Devin (Velvel) Freedman (*pro hac vice*)
Alex Potter (*pro hac vice*)
155 E. 44th Street, Suite 915
New York, NY 10017
Email: kroche@fnf.law
Email: vel@fnf.law
Email: apotter@fnf.law

STRIS & MAHER LLP
Elizabeth Brannen (# 226234)
John Stokes (# 310847)
Lauren Martin (# 294367)
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
Email: ebrannen@stris.com
Email: jstokes@stris.com
Email: lmartin@stris.com

Christopher M. Rigali (*pro hac vice*)
Jacqueline Sahlberg (*pro hac vice*)
1717 K St NW, Suite 900
Washington, DC 20006
Email: crigali@stris.com
Email: jsahlberg@stris.com

Executed on June 22, 2026, at Brooklyn, New York.

*/s/ Christine M. Ray*
Christine M. Ray

# EXHIBIT B

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865)
lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000

BOBBY A. GHAJAR (198719)
bghajar@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400

PHILLIP E. MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

*Attorneys for Defendant Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| COGNELLA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:26-cv-04053-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. Vince Chhabria |

**PROPOUNDING PARTY:** **PLAINTIFF COGNELLA, INC.**

**RESPONDING PARTY:** **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:** **ONE**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and Local Rule 33 of the United States District Court for the Northern District of California, Defendant Meta Platforms, Inc. ("Meta") hereby objects and responds as follows to Plaintiff Cognella, Inc.'s ("Plaintiff") First Set of Interrogatories ("Interrogatories").

## I. Responses to All Interrogatories

**1.** Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.** To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 35) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

**3.** Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II. Objections to Instructions and Definitions

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions.

**1.** Meta objects to the definition of "COPYRIGHT MANAGEMENT INFORMATION" to the extent it calls for a legal conclusion. Specifically, a determination of whether any particular data, text, or metadata constitutes "Copyright Management Information" under 17 U.S.C. § 1202(c) is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular information qualifies as legally protected Copyright Management Information and a determination of such is not within Meta's possession, custody, or control. Meta further objects to this definition as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it includes identifying information for persons that "created" copyrighted works.

**2.** Meta objects to the definition of "COGNELLA WORK(S)" as overbroad, unduly burdensome and disproportionate to the needs of the case to the extent it puts the burden on Meta to determine which works purportedly "belong" to COGNELLA. Meta further objects to the term "belong" as vague and ambiguous as it is unclear what form of possession or ownership is intended by the use of this term. Without agreeing that COGNELLA possesses or owns any valid copyright in any specific works, Meta will interpret the term COGNELLA WORKS to refer to the specific works identified in Exhibit A to the Interrogatories.

**3.** Meta objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent these definitions are inconsistent with and otherwise seek to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the forthcoming ESI Order.

**4.** Meta further objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent they seek to expand or alter the scope of the Federal Rules of Civil Procedure, the Local Rules of this Court, or the forthcoming ESI Order. Meta further objects to these definitions to the extent they seek Meta to produce documents that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), which are

unduly burdensome to preserve and search, or which otherwise, under the proportionality factors, should not be preserved.

**5.** Meta objects to the definitions of "CORPORA" and "DATASET(S)" as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent they refer to non-textual materials that are not relevant to any party's claims or defenses and to the extent they refer vaguely to "other content." Without any admission with respect to content or nature, Meta will construe the term "DATASET(S)" to refer to Anna's Archive, Bibliotik, Books3, C4, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

**6.** Meta objects to the definition of "INFRINGE," "INFRINGED," and "INFRINGES" to the extent it calls for a legal conclusion. Specifically, a determination of whether any conduct constitutes copyright infringement is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular conduct infringes on a legally protected work and a determination of such is not within Meta's possession, custody, or control.

**7.** Meta objects to the definition of "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "any machine learning model, neural network, generative artificial intelligence model, transformer model, or similar computational system trained on large quantities of text or other data" is overly broad and encompasses tools and services that are not relevant to any party's claims or defenses. Meta further objects to this definition to the extent that it purports to require Meta to produce documents or information concerning large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiff's allegedly copyrighted works. Meta further objects that the phrase "process, predict, generate, summarize, classify, or otherwise manipulate natural language or content" renders the definition vague, ambiguous, confusing, and overly broad. Meta will construe "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" to mean the publicly released Llama 1, Llama 2, Llama 3, Llama 4, and Muse Spark models.

**8.** Meta objects to the definition of "META," "YOU," and "YOUR" as overbroad, unduly burdensome, and disproportionate to the needs of the case. Meta will construe "META,"

"YOU," or "YOUR" to mean Meta Platforms, Inc.

**9.** Meta objects to the definition of "PIRATED," "PIRACY," and "PIRATED MATERIAL" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works.

**10.** Meta objects to the definition of "SHADOW LIBRARY" and "SHADOW LIBRARIES" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent it refers to non-textual materials that are not relevant to any party's claims or defenses and to the extent it refers vaguely to "media and similar materials." Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "DATASETS." Without any admission with respect to content or nature, Meta will construe the term "SHADOW LIBRARY" to refer to certain of the third-party datasets identified by Plaintiff, namely Anna's Archive, Bibliotik, Books3, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

**11.** Meta objects to the definition of "WEB SCRAPING" as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the extensive list of undefined terms, including "extraction, collection, copying, downloading, crawling, indexing, harvesting, or retrieval" and "aggregation, storage, processing" are susceptible to multiple definitions, rendering this definition unintelligibly ambiguous. Meta further objects to the phrase "images, metadata, or other content" as overbroad and disproportionate to the needs of the case, to the extent it refers to training data other than text data that is not relevant to any party's claims or defenses. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the terms "SHADOW LIBRARIES" and "LARGE LANGUAGE

MODELS." Meta will construe "WEB SCRAPING" to mean the automated collection of text data from the public internet for use in training the Meta Language Models (as construed above).

## III. General Objections

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

**1.** Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

**2.** Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.

**3.** Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the forthcoming ESI Order and the Protective Order entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta. To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

**4.** Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

**5.** Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody, or control; (b) not maintained by Meta in the normal course of business; (c) already in the possession, custody, or control of Plaintiff; (d) readily available through public sources or from

sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiff than to Meta. Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

**6.** Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Interrogatories, Meta will not produce information or documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the forthcoming ESI Order. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiff return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the forthcoming ESI Order and the Protective Order entered in this action.

**7.** Meta objects to the Interrogatories to the extent that they purport to require Meta to provide information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party. Meta will not provide information or documents subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

**8.** Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

**9.** Meta objects to the Interrogatories to the extent that they seek confidential, trade secret, competitively sensitive, business, financial, or other proprietary information. To the extent documents or information containing any such information are nonprivileged, responsive to the

Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the forthcoming ESI Order and the Protective Order entered in this action. Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively sensitive information that is neither relevant nor proportional to the needs of this action.

**10.** Meta objects to the Interrogatories to the extent they seek documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

**11.** Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiff as duplicative, overbroad, unduly burdensome, and oppressive.

**12.** Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

## IV. Objections and Responses to Individual Interrogatories

**INTERROGATORY NO. 1:**

Which COGNELLA WORKS did YOU obtain from a SHADOW LIBRARY?

**RESPONSE TO INTERROGATORY NO. 1:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, YOU, and SHADOW LIBRARY.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, Meta downloaded as part of Anna's Archive, Books3 and LibGen for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 2:**

Identify each COGNELLA WORK that YOU obtained through WEB SCRAPING.

**RESPONSE TO INTERROGATORY NO. 2:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORK, YOU, and WEB SCRAPING.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 3:**

For each COGNELLA WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING, when and how did you obtain it? Identify and describe each instance in detail, including the source or sources, date or dates of acquisition, and means or method of acquisition.

**RESPONSE TO INTERROGATORY NO. 3:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORK, YOU, SHADOW LIBRARY, and WEB SCRAPING.

Meta objects to this interrogatory to the extent it is duplicative of information sought by Interrogatory Nos. 1 and 2. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail, including" seeks unspecified information beyond the recited request for "the source or sources, date or dates of acquisition, and means or method of acquisition" of data obtained from a SHADOW LIBRARY or WEB SCRAPING.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1 and 2, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any (1) Meta downloaded as part of Anna's Archive, Books3, and/or LibGen for use in training Meta's LARGE LANGUAGE MODELS and (2) Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE

LANGUAGE MODELS. Meta will provide reasonably available information regarding the source, timing, and method of download. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 4:**

Which COGNELLA WORKS did YOU use, in whole or in part, to train any of YOUR LLM MODELS?

**RESPONSE TO INTERROGATORY NO. 4:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined. Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, were used to pre-train Meta's LLM MODELS. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 5:**

For each COGNELLA WORK that YOU used, in whole or in part, to train any of YOUR LLM MODELS, when and how did you do so? IDENTIFY and describe each instance in detail.

**RESPONSE TO INTERROGATORY NO. 5:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined. Meta will interpret the term "train" as the act of pre-training and/or fine-

tuning a large language model. Meta further objects to the phrase "how did you do so?" as it does not specify which actions the interrogatory seeks information about. Meta will interpret the phrase "how did you do so?" as seeking a high-level general description of the way a work like a COGNELLA WORK would be used in the pre-training process of Meta's LLM MODELS. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail" seeks unspecified information about the use of COGNELLA WORKS in pre-training. Meta will interpret this phrase to seek a high-level general description of the way a work like a COGNELLA WORK would be used in the pre-training process of Meta's LLM MODELS.

Subject to and without waiving the foregoing objections, as stated for Interrogatory No. 4, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, that were used to pre-train Meta's LLM MODELS and Meta will provide a high-level general description of the way a work like a COGNELLA WORK would be used in the pre-training process of Meta's LLM MODELS. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 6:**

IDENTIFY each COGNELLA WORK from which YOU removed or altered any COPYRIGHT MANAGEMENT INFORMATION.

**RESPONSE TO INTERROGATORY NO. 6:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, YOU, and COPYRIGHT MANAGEMENT INFORMATION.

Meta further objects to this interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information about COGNELLA WORKS that were not used as part of Meta's pre-training of large language models.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify for which COGNELLA WORKS identified in its responses to

Interrogatory Nos. 1 and 2 Meta is able to reasonably determine that COPYRIGHT MANAGEMENT INFORMATION was removed or altered by Meta. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 7:**

Explain what you did with each COGNELLA WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING or that YOU used, in whole or in part, to train any of YOUR LLM MODELS. For each COGNELLA WORK, your explanation should state whether, when, and how it was:

(a) retained, stored, or preserved;

(b) ingested;

(c) processed;

(d) tokenized;

(e) duplicated or reproduced;

(f) de-duplicated;

(g) stripped of COPYRIGHT MANAGEMENT INFORMATION;

(h) modified or altered in any other way;

(i) distributed;

(j) torrented;

(k) incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters; or

(l) deleted.

**RESPONSE TO INTERROGATORY NO. 7:**

Meta incorporates by reference its objections and definitions above, including to the terms COGNELLA WORKS, SHADOW LIBRARY, WEB SCRAPING, COPYRIGHT MANAGEMENT INFORMATION, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory as compound because it comprises at least twelve subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure. Meta further objects to the terms "[e]xplain what you did", "processed", "tokenized", "stripped", "modified or altered in any other way", "incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters" as vague and ambiguous. Meta further objects to this interrogatory to the extent it seeks information sought by Interrogatory Nos. 1-6. Meta further objects to this interrogatory to the extent it requires Meta to create or re-create information or data that is not in Meta's possession, custody, or control.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1-6, Meta is undertaking a reasonable investigation to identify which COGNELLA WORKS, if any, were downloaded and used to pre-train Meta's LLM MODELS. Meta will provide a high-level general description of the way a work like a COGNELLA WORK would be utilized by Meta in conjunction with Meta's LLM MODELS. As previously communicated to counsel for COGNELLA, Meta may need additional information, including the text of the COGNELLA WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 8:**

For each response to every Request for Admission served on YOU by Plaintiff in this case that is not an unqualified admission, IDENTIFY the following information:

(a) The number of the Request for Admission;

(b) All facts on which YOU base your response;

(c) All PERSONS who have knowledge of those facts; and

(d) All DOCUMENTS that support YOUR response along with the custodian of those DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 8:**

Meta incorporates by reference its objections and definitions above, including to the terms YOU and DOCUMENTS.

Meta further objects to this interrogatory as compound because it comprises multiple subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure. Meta will respond to this interrogatory to the extent required by Local Rules 33-2 and 36-2.

Meta is willing to meet and confer regarding the appropriate scope, if any, of a response to this interrogatory.

Dated: June 22, 2026

COOLEY LLP

By: */s/ Phillip E. Morton*
Phillip E. Morton

Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON LLP
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of New York. I am employed in New York County, State of New York. I am over the age of eighteen years, and not a party to the within action. My business address is Dunn Isaacson Rhee LLP, 11 Park Place, New York, New York 10007. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES [NOS. 1–8]**

☒ (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Dunn Isaacson Rhee LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

FREEDMAN NORMAND FRIEDLAND LLP
Kyle Roche (*pro hac vice*)
Devin (Velvel) Freedman (*pro hac vice*)
Alex Potter (*pro hac vice*)
155 E. 44th Street, Suite 915
New York, NY 10017
Email: kroche@fnf.law
Email: vel@fnf.law
Email: apotter@fnf.law

STRIS & MAHER LLP
Elizabeth Brannen (# 226234)
John Stokes (# 310847)
Lauren Martin (# 294367)
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
Email: ebrannen@stris.com
Email: jstokes@stris.com
Email: lmartin@stris.com

Christopher M. Rigali (*pro hac vice*)
Jacqueline Sahlberg (*pro hac vice*)
1717 K St NW, Suite 900
Washington, DC 20006
Email: crigali@stris.com
Email: jsahlberg@stris.com

Executed on June 22, 2026, at Brooklyn, New York.

*/s/ Christine M. Ray*
Christine M. Ray

# EXHIBIT C

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865)
lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
BOBBY A. GHAJAR (198719)
bghajar@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
PHILLIP E. MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

*Attorneys for Defendant Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CAMBRONNE INC., et al.<br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:26-cv-03725-VC<br><br>**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. Vince Chhabria |

**PROPOUNDING PARTY:** **PLAINTIFFS CAMBRONNE INC., LISA BARRETTA, PHILIP SHISHKIN, JANE ADAMS, MATTHEW SACKS, AND MICHAEL KOCHIN**

**RESPONDING PARTY:** **DEFENDANT META PLATFORMS, INC.**

**SET NUMBER:** **ONE**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and Local Rule 33 of the United States District Court for the Northern District of California, Defendant Meta Platforms, Inc. ("Meta") hereby objects and responds as follows to Plaintiffs Cambronne Inc., Lisa Barretta, Philip Shishkin, Jane Adams, Matthew Sacks, and Michael Kochin's ("Plaintiffs") First Set of Interrogatories ("Interrogatories").

## I. Responses to All Interrogatories

**1.** Meta's responses to these Interrogatories are made to the best of Meta's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Meta's recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Meta's further discovery or investigation. Meta reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to these Interrogatories but discovered subsequent to the date of these responses, including, but not limited to, any such information or documents obtained in discovery herein.

**2.** To the extent that Meta responds to an Interrogatory by stating that Meta will provide information or documents that Meta deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c) and/or Federal Rule of Evidence 501, Meta will only do so subject to the Protective Order (Dkt. 53) governing the unauthorized use or disclosure of such information or documents with a designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" distinction.

**3.** Meta reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other

action for any purpose whatsoever of Meta's responses herein and any document or thing identified or provided in response to the Interrogatories.

## II. Objections to Instructions and Definitions

Whether or not separately set forth in response to each Interrogatory, Meta makes these objections to the following Instructions and Definitions.

**1.** Meta objects to the definition of "COPYRIGHT MANAGEMENT INFORMATION" to the extent it calls for a legal conclusion. Specifically, a determination of whether any particular data, text, or metadata constitutes "Copyright Management Information" under 17 U.S.C. § 1202(c) is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular information qualifies as legally protected Copyright Management Information and a determination of such is not within Meta's possession, custody, or control. Meta further objects to this definition as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it includes identifying information for persons that "created" copyrighted works.

**2.** Meta objects to the definition of "PLAINTIFFS' WORK(S)" as overbroad, unduly burdensome and disproportionate to the needs of the case to the extent it puts the burden on Meta to determine which works purportedly "belong" to PLAINTIFFS. Meta further objects to the term "belong" as vague and ambiguous as it is unclear what form of possession or ownership is intended by the use of this term. Without agreeing that PLAINTIFFS possess or own any valid copyright in any specific works, Meta will interpret the term PLAINTIFFS' WORKS to refer to the specific works identified in Exhibit A to the Interrogatories.

**3.** Meta objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent these definitions are inconsistent with and otherwise seek to circumvent the custodian and search term limits for electronic communications (including emails and other electronic correspondence, and documents attached thereto), as provided in the forthcoming ESI Order.

**4.** Meta further objects to the definitions of "COMMUNICATIONS" and "DOCUMENT(S)" to the extent they seek to expand or alter the scope of the Federal Rules of Civil Procedure, the Local Rules of this Court, or the forthcoming ESI Order. Meta further objects to

these definitions to the extent they seek Meta to produce documents that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), which are unduly burdensome to preserve and search, or which otherwise, under the proportionality factors, should not be preserved.

**5.** Meta objects to the definitions of "CORPORA" and "DATASET(S)" as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent they refer to non-textual materials that are not relevant to any party's claims or defenses and to the extent they refer vaguely to "other content." Without any admission with respect to content or nature, Meta will construe the term "DATASET(S)" to refer to Anna's Archive, Bibliotik, Books3, C4, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

**6.** Meta objects to the definition of "INFRINGE," "INFRINGED," and "INFRINGES" to the extent it calls for a legal conclusion. Specifically, a determination of whether any conduct constitutes copyright infringement is inherently legal in nature and calls for a legal conclusion. Meta is not in a position to know whether any particular conduct infringes on a legally protected work and a determination of such is not within Meta's possession, custody, or control.

**7.** Meta objects to the definition of "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" as vague and ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the phrase "any machine learning model, neural network, generative artificial intelligence model, transformer model, or similar computational system trained on large quantities of text or other data" is overly broad and encompasses tools and services that are not relevant to any party's claims or defenses. Meta further objects to this definition to the extent that it purports to require Meta to produce documents or information concerning large language models that were not publicly released and/or were not trained on corpuses of text that allegedly include any of Plaintiffs' allegedly copyrighted works. Meta further objects that the phrase "process, predict, generate, summarize, classify, or otherwise manipulate natural language or content" renders the definition vague, ambiguous, confusing, and overly broad. Meta will construe "LARGE LANGUAGE MODEL(S)" and "LLM MODEL(S)" to mean the publicly released Llama 1, Llama 2, Llama 3, Llama 4, and Muse Spark models.

**8.** Meta objects to the definition of "META," "YOU," and "YOUR" as overbroad, unduly burdensome, and disproportionate to the needs of the case. Meta will construe "META," "YOU," or "YOUR" to mean Meta Platforms, Inc.

**9.** Meta objects to the definition of "PIRATED," "PIRACY," and "PIRATED MATERIAL" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works.

**10.** Meta objects to the definition of "SHADOW LIBRARY" and "SHADOW LIBRARIES" to the extent it calls for legal conclusions and assumes disputed issues. Meta further objects that the definition is phrased in a way that is argumentative, prejudicial, and lacks foundation. Meta further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case, including (but not limited to) the extent it refers to non-textual materials that are not relevant to any party's claims or defenses and to the extent it refers vaguely to "media and similar materials." Meta is not in a position to know whether any particular work is subject to copyright protection or whether third-party repositories lacked authorization to host or possess such works. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the term "DATASETS." Without any admission with respect to content or nature, Meta will construe the term "SHADOW LIBRARY" to refer to certain of the third-party datasets identified by Plaintiffs, namely Anna's Archive, Bibliotik, Books3, Library Genesis (or LibGen), Sci-Hub, The Pile, and Z-Library.

**11.** Meta objects to the definition of "WEB SCRAPING" as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case. In particular, the extensive list of undefined terms, including "extraction, collection, copying, downloading, crawling, indexing, harvesting, or retrieval" and "aggregation, storage, processing" are susceptible to multiple definitions, rendering this definition unintelligibly ambiguous. Meta further objects to the phrase "images, metadata, or other content" as overbroad and disproportionate to the needs of the case, to the extent it refers to training data other than text data that is not relevant to any party's

claims or defenses. Meta further objects to this definition to the extent that it incorporates the objectionable portions of the terms "SHADOW LIBRARIES" and "LARGE LANGUAGE MODELS." Meta will construe "WEB SCRAPING" to mean the automated collection of text data from the public internet for use in training the Meta Language Models (as construed above).

## III. General Objections

Meta hereby incorporates the following general objections into each of its specific responses and objections to the individual Interrogatories as if fully set forth therein:

**1.** Meta incorporates by reference each and every General Objection set forth below into each and every specific Response. From time to time, a specific Response may repeat a General Objection for emphasis or some other reason. The failure to repeat any General Objection in any specific Response shall not be interpreted as a waiver of any General Objection to that Response.

**2.** Any information provided in response to any individual Interrogatory is made without waiver of, and subject to, the General Objections and any additional objections asserted in response to that specific Interrogatory.

**3.** Meta objects to the Interrogatories to the extent that they impose any differing or additional obligations from those required by the Federal Rules, the Local Rules, or any other applicable rule, law, or doctrine, the forthcoming ESI Order and the Protective Order entered in this action (the "Applicable Laws, Rules, and Agreements"), on the ground that such a requirement exceeds the scope of permissible discovery and attempts to impose an unreasonable burden and expense on Meta. To the extent any Interrogatory conflicts with, or purports to impose additional or different duties and obligations, Meta will respond in accordance with the Applicable Laws, Rules, and Agreements.

**4.** Meta objects to the Interrogatories to the extent that they are overly broad, vague, ambiguous, and unduly burdensome; or seek documents and information that are neither relevant nor proportional to the needs of this action.

**5.** Meta objects to the Interrogatories to the extent they seek information or documents or seek to impose a search for information or documents: (a) not within Meta's possession, custody,

or control; (b) not maintained by Meta in the normal course of business; (c) already in the possession, custody, or control of Plaintiffs; (d) readily available through public sources or from sources that are more convenient, less burdensome, or less expensive; or (e) from sources that are more readily available to Plaintiffs than to Meta. Meta further objects to the extent the burden or expense of the proposed discovery outweighs its likely benefit.

**6.** Meta objects to the Interrogatories to the extent that they seek documents and information protected from disclosure by privileges and other protections from production, including, without limitation: (a) the attorney-client privilege; (b) the work-product doctrine; or (c) any other constitutional, statutory, common law or regulatory protection, immunity, or proscription from disclosure. In responding to the Interrogatories, Meta will not produce information or documents protected by such privileges. Where Meta withholds information under claim of privilege, Meta will adhere to the requirements under the forthcoming ESI Order. Meta does not intend the inadvertent production of any privileged or protected information to constitute a waiver of Meta's rights to assert any applicable privilege or protection, and Meta further reserves the right to demand that Plaintiffs return, destroy, or sequester any privileged or protected documents inadvertently produced and all copies thereof consistent with Fed. R. Civ. P. 26(b)(5)(B) and the terms and conditions of the forthcoming ESI Order and the Protective Order entered in this action.

**7.** Meta objects to the Interrogatories to the extent that they purport to require Meta to provide information or documents in violation of a legal, contractual, or other obligation of nondisclosure owed to a third party. Meta will not provide information or documents subject to any such obligation unless and until it receives the necessary consent from any such third party or, in the absence of such consent, unless and until it is ordered to do so by a court of competent jurisdiction.

**8.** Meta objects to the Interrogatories to the extent they call for, or can be interpreted as calling for, Meta to make legal conclusions, or to the extent they assume disputed issues or are phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper.

**9.** Meta objects to the Interrogatories to the extent that they seek confidential, trade

secret, competitively sensitive, business, financial, or other proprietary information. To the extent documents or information containing any such information are nonprivileged, responsive to the Interrogatories, and are not otherwise objectionable, Meta will only produce such documents and information subject to the forthcoming ESI Order and the Protective Order entered in this action. Meta further reserves the right to redact or otherwise withhold any confidential, proprietary, trade secret, or competitively sensitive information that is neither relevant nor proportional to the needs of this action.

**10.** Meta objects to the Interrogatories to the extent they seek documents that are not proportionate to the needs of the case and/or not relevant to any party's claims or defenses.

**11.** Meta objects to the Interrogatories that seek to impose an obligation to investigate or discover information or materials from third parties or sources that are equally accessible to Plaintiffs as duplicative, overbroad, unduly burdensome, and oppressive.

**12.** Meta reserves the right to assert additional objections, or to supplement its Responses as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

## IV. OBJECTIONS AND RESPONSES TO INDIVIDUAL INTERROGATORIES

**INTERROGATORY NO. 1:**

Which PLAINTIFFS' WORKS did YOU obtain from a SHADOW LIBRARY?

**RESPONSE TO INTERROGATORY NO. 1:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, YOU, and SHADOW LIBRARY.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, Meta downloaded as part of Anna's Archive, Books3 and LibGen for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 2:**

Identify each PLAINTIFFS' WORK that YOU obtained through WEB SCRAPING.

**RESPONSE TO INTERROGATORY NO. 2:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORK, YOU, and WEB SCRAPING.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 3:**

For each PLAINTIFFS' WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING, when and how did you obtain it? Identify and describe each instance in detail, including the source or sources, date or dates of acquisition, and means or method of acquisition.

**RESPONSE TO INTERROGATORY NO. 3:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORK, YOU, SHADOW LIBRARY, and WEB SCRAPING.

Meta objects to this request to the extent it is duplicative of information sought by Interrogatory Nos. 1 and 2. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail, including" seeks unspecified information beyond the recited request for "the source or sources, date or dates of acquisition, and means or method of acquisition" of data obtained from a SHADOW LIBRARY or WEB SCRAPING.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1 and 2, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any (1) Meta downloaded as part of Anna's Archive, Books3, and/or LibGen for use in training

Meta's LARGE LANGUAGE MODELS and (2) Meta downloaded as part of any web archiving activity conducted by Meta's SpiderMate web archiver for use in training Meta's LARGE LANGUAGE MODELS. Meta will provide reasonably available information regarding the source, timing, and method of download. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 4:**

Which PLAINTIFFS' WORKS did YOU use, in whole or in part, to train any of YOUR LLM MODELS?

**RESPONSE TO INTERROGATORY NO. 4:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined. Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, were used to pre-train Meta's LLM MODELS. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 5:**

For each PLAINTIFFS' WORK that YOU used, in whole or in part, to train any of YOUR LLM MODELS, when and how did you do so? IDENTIFY and describe each instance in detail.

**RESPONSE TO INTERROGATORY NO. 5:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory to the term "train" as vague and ambiguous to the extent it is undefined. Meta will interpret the term "train" as the act of pre-training and/or fine-tuning a large language model. Meta further objects to the phrase "how did you do so?" as it does not specify which actions the interrogatory seeks information about. Meta will interpret the phrase "how did you do so?" as seeking a high-level general description of the way a work like a PLAINTIFFS' WORK would be used in the pre-training process of Meta's LLM MODELS. Meta further objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent the phrase "[i]dentify and describe each instance in detail" seeks unspecified information about the use of PLAINTIFFS' WORKS in pre-training. Meta will interpret this phrase to seek a high-level general description of the way a work like a PLAINTIFFS' WORK would be used in the pre-training process of Meta's LLM MODELS.

Subject to and without waiving the foregoing objections, as stated for Interrogatory No. 4, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, that were used to pre-train Meta's LLM MODELS and Meta will provide a high-level general description of the way a work like a PLAINTIFFS' WORK would be used in the pre-training process of Meta's LLM MODELS. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 6:**

IDENTIFY each PLAINTIFFS' WORK from which YOU removed or altered any COPYRIGHT MANAGEMENT INFORMATION.

**RESPONSE TO INTERROGATORY NO. 6:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, YOU, and COPYRIGHT MANAGEMENT INFORMATION.

Meta further objects to this interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information about PLAINTIFFS' WORKS that were not used as part of Meta's pre-training of large language models.

Subject to and without waiving the foregoing objections, Meta is undertaking a reasonable investigation to identify for which PLAINTIFFS' WORKS identified in its responses to Interrogatory Nos. 1 and 2 Meta is able to reasonably determine that COPYRIGHT MANAGEMENT INFORMATION was removed or altered by Meta. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 7:**

Explain what you did with each PLAINTIFFS' WORK that YOU obtained from a SHADOW LIBRARY or through WEB SCRAPING or that YOU used, in whole or in part, to train any of YOUR LLM MODELS. For each PLAINTIFFS' WORK, your explanation should state whether, when, and how it was:

(a) retained, stored, or preserved;

(b) ingested;

(c) processed;

(d) tokenized;

(e) duplicated or reproduced;

(f) de-duplicated;

(g) stripped of COPYRIGHT MANAGEMENT INFORMATION;

(h) modified or altered in any other way;

(i) distributed;

(j) torrented;

(k) incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters; or

(l) deleted.

**RESPONSE TO INTERROGATORY NO. 7:**

Meta incorporates by reference its objections and definitions above, including to the terms PLAINTIFFS' WORKS, SHADOW LIBRARY, WEB SCRAPING, COPYRIGHT MANAGEMENT INFORMATION, YOU, and YOUR LLM MODELS.

Meta further objects to this interrogatory as compound because it comprises at least twelve subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure. Meta further objects to the terms "[e]xplain what you did", "processed", "tokenized", "stripped", "modified or altered in any other way", "incorporated, in whole or in part, into any of YOUR LLM MODELS or model parameters" as vague and ambiguous. Meta further objects to this interrogatory to the extent it seeks information sought by Interrogatory Nos. 1-6. Meta further objects to this interrogatory to the extent it requires Meta to create or re-create information or data that is not in Meta's possession, custody, or control.

Subject to and without waiving the foregoing objections, as stated for Interrogatory Nos. 1-6, Meta is undertaking a reasonable investigation to identify which PLAINTIFFS' WORKS, if any, were downloaded and used to pre-train Meta's LLM MODELS. Meta will provide a high-level general description of the way a work like a PLAINTIFFS' WORK would be utilized by Meta in conjunction with Meta's LLM MODELS. As previously communicated to counsel for PLAINTIFFS, Meta may need additional information, including the text of the PLAINTIFFS' WORKS, in order to provide a more complete response to this Interrogatory. Meta will supplement this response on a rolling basis as it identifies responsive information.

**INTERROGATORY NO. 8:**

For each response to every Request for Admission served on YOU by Plaintiffs in this case that is not an unqualified admission, IDENTIFY the following information:

(a) The number of the Request for Admission;

(b) All facts on which YOU base your response;

(c) All PERSONS who have knowledge of those facts; and

(d) All DOCUMENTS that support YOUR response along with the custodian of those DOCUMENTS.

**RESPONSE TO INTERROGATORY NO. 8:**

Meta incorporates by reference its objections and definitions above, including to the terms YOU and DOCUMENTS.

Meta further objects to this interrogatory as compound because it comprises multiple subparts and would potentially exceed the allowable number of interrogatories under the Federal Rules of Civil Procedure. Meta will respond to this interrogatory to the extent required by Local Rule 33-2 and 36-2.

Meta is willing to meet and confer regarding the appropriate scope, if any, of a response to this interrogatory.

Dated: June 26, 2026

COOLEY LLP

By: */s/ Phillip E. Morton*
Phillip E. Morton


Karen L. Dunn (*pro hac vice*)
Jessica E. Phillips (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900
Email: kdunn@dirllp.com
jphillips@dirllp.com
ksmith@dirllp.com

Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400
Email: khartnett@cooley.com
mweinstein@cooley.com
lstameshkin@cooley.com

Bobby A. Ghajar
COOLEY LLP
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400
Facsimile: (310) 883-6500
Email: bghajar@cooley.com

Phillip E. Morton (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Angela L. Dunning
CLEARY GOTTLIEB STEEN & HAMILTON LLP
151 University Avenue
Palo Alto, CA 94301-1632
Telephone: (650) 815-4131
Email: adunning@cgsh.com

*Counsel for Defendant Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of Washington, D.C. I am employed in Washington, D.C. I am over the age of eighteen years, and not a party to the within action. My business address is Dunn Isaacson Rhee LLP, 401 Ninth Street NW, Washington, D.C. 20004. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT META PLATFORMS, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES [NOS. 1-8]**

☒ (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Dunn Isaacson Rhee LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

FREEDMAN NORMAND FRIEDLAND LLP
Kyle Roche (*pro hac vice*)
Devin (Velvel) Freedman (*pro hac vice*)
Alex Potter (*pro hac vice*)
155 E. 44th Street, Suite 915
New York NY 10017
Email: vel@fnf.law
Email: kroche@fnf.law
Email: apotter@fnf.law

STRIS & MAHER LLP
Elizabeth Brannen (# 226234)
John Stokes (# 310847)
Lauren Martin (# 294367)
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
Email: ebrannen@stris.com
Email: jstokes@stris.com
Email: Jason.Morris@ndlf.com

Christopher M. Rigali (*pro hac vice*)
Jacqueline Sahlberg (*pro hac vice*)
1717 K St NW Suite 900
Washington, DC 20006
Email: crigali@stris.com
Email: jsahlberg@stris.com

Executed on June 26, 2026, at Washington, D.C.

*/s/ Jenifer N. Hartley*
Jenifer N. Hartley